UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FMC TECHNOLOGIES, INC., and FMC FOODTECH, INC., successors-in-interest to DESIGN SYSTEMS, INC. and STEIN, INC., d/b/a STEIN-DSI,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES EDWARDS and PROCESSING EQUIPMENT SOLUTIONS, INC.,<br><br>Defendants. | CASE NO. C05-946C<br><br>ORDER |

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 22) ("Defs.' Mot."), Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Dkt. No. 25) ("Pls.' Opp'n"), and Defendants' Reply in Support of their motion (Dkt. No. 37) ("Defs.' Reply"). Having considered the papers submitted by the parties and finding oral argument unnecessary, the Court GRANTS in part and DENIES in part Defendants' motion for the following reasons.

**I. BACKGROUND**

Plaintiffs originally filed suit against Defendant Edwards and another individual, Darren Wattles, the founders of Defendant Processing Equipment Solutions, Inc., in King County Superior Court ("FMC

ORDER – 1

I") for, *inter alia*, misappropriation of trade secrets. This claim was based on an allegation that these defendants stole comprehensive drawings of Plaintiffs' portioner[1] parts. However, when the FMC I defendants swore under oath that they did not have any of Plaintiffs' drawings and failed to produce any drawings during discovery, the parties chose to settle the state court suit. Apparently experiencing a change of heart, Darren Wattles later approached FMC and disclosed that he had, in fact, downloaded the drawings at issue and delivered them to James Edwards. In light of this new information, Plaintiffs have brought suit again, this time in federal court, invoking diversity jurisdiction. (*See* First Amended Complaint (Dkt. No. 19) ("Am. Compl.").) Plaintiffs' instant suit seeks relief under two alternative theories. Count One seeks to affirm the Settlement Agreement and obtain relief for fraud, conversion, unjust enrichment, and breach.[2] Count Two, in the alternative, seeks total rescission of the Settlement Agreement and relief based on the original causes of action brought in FMC I.[3] Defendants now move the Court to dismiss five of the eight claims in Count One and all six claims in Count Two.[4]

---

[1] Portioners are cutting equipment that use high pressure water jets to cut poultry, red meat, and fish into equal weight portions for resale at the wholesale retail level.

[2] Specifically, Count One includes the following causes of action: (1) common law fraudulent misrepresentation; (2) common law fraudulent statement of intent; (3) unjust enrichment and constructive trust; (4) reformation of contract based on fraud; (5) breach of settlement agreement by failure to cooperate; (6) breach of settlement agreement by premature design of portioner; (7) additional breaches of settlement agreement; and (8) unfair competition. (Am. Compl. 9–14.)

[3] Count Two includes the following causes of action: (1) rescission; and (2)–(6) reallegation of all paragraphs of the October 29, 2001 Complaint in FMC I. (Am. Compl. 14–15.) The Complaint in FMC I (filed as an action against James Edwards and Darren Wattles) included the following claims for relief: (a) breach of non-competition/disclosure agreement (Edwards); (b) breach of FMC's guidelines (Edwards & Wattles); (c) threatened misappropriation of trade secrets (Edwards & Wattles); (d) breach of fiduciary duty and duty of loyalty (Edwards & Wattles); and (e) injunctive relief (Edwards & Wattles). (Kennar Decl. Ex. A.)

[4] Defendants seek dismissal of Count One, causes of action (1) through (5), as set forth *supra* note 2, and dismissal of Count Two in its entirety, as set forth *supra* note 3. In their instant motion to dismiss, Defendants do not seek dismissal of Count One, causes of action (6) through (8), as set forth *supra* note 2. (*See* Defs.' Mot. 1 n.1.)

ORDER – 2

Relevant to the instant motion, the settlement of FMC I includes a mutual release of "all claims, demands, liabilities, obligations, debts, costs, and causes of action of any kind or character, whether known or unknown, suspected or unsuspected, actual or alleged." (Kennar Decl. Ex. F (Settlement Agreement and Release of Claims ¶¶ 4.3, 4.4).) The settlement also contains a choice-of-law clause, which elects Washington law and specifically rejects the laws of Delaware, Ohio, and Georgia. (*Id.* ¶ 6.5.) Further, the settlement contains a merger/integration clause, which provides:

> <u>Full Integration/Amendments in Writing.</u>  This Agreement is the entire agreement between the Parties relating to the subject matter discussed above, and replaces any and all prior negotiations, representations, or agreements between the Parties, whether oral, electronic, or written, regardless of subject matter, all of which are merged herein.  The parties acknowledge that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.  No amendment, modification, or supplement to this Agreement shall be effective unless it is in writing and signed by all Parties.

(*Id.* ¶ 6.9.) Finally, the settlement contains a mutual obligation to "issue a mutually acceptable public statement to advise the public and [the parties'] respective customers that the parties have agreed to settle the dispute in order to avoid the cost of trial." (*Id.* ¶ 4.1.) The form of the release is set forth in an exhibit to the Settlement Agreement; it contains a brief description of the FMC I litigation and ends with the following sentence: "Jim [Edwards] and Darren [Wattles] have agreed to cooperate with FMC in the future to make sure that FMC's substantial investment in the water jet cutting industry is protected." (*Id.* ¶ 4.1 & Ex. D.)

In their papers on the instant motion, the parties present their differing views on whether the settlement was a valid and enforceable contract, what the various terms of the settlement mean and what effect they should have, and, more globally, exactly what effect the alleged fraud and lies during discovery and/or in negotiating the settlement in FMC I should have in the instant litigation.

//

//

//

ORDER – 3

## II. ANALYSIS

### A. Standard for 12(b)(6) Motion

The Court may dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted only if it "appears beyond doubt" that Plaintiffs "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In deciding a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to Plaintiffs. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). Dismissal is warranted "only if it appears to a certainty that [Plaintiffs] would be entitled to no relief under any state of facts that could be proved." *Id.* Despite the liberal standard, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). However, a motion to dismiss also must be decided in light of Rule 8(a)'s relaxed pleading requirements, under which a plaintiff need only make a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).

### B. Choice of Law

Without deciding whether indeed there was a valid contract or whether the settlement should be reformed or rescinded due to fraud, the Court finds that Washington law applies to the instant dispute. The "traditional view" is that the effect of fraud or misrepresentation on a contract is determined by the law chosen by the parties, "unless the choice of law provision itself was obtained by a misrepresentation." *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635 (9th Cir. 1988); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 201 (1971); *id.* cmt. c. No party alleges that the choice-of-law clause was obtained fraudulently. Thus, the parties' choice of Washington law in their settlement of FMC I will govern the instant suit, regardless of whether the settlement was valid or not. Accordingly, the following general rules apply here: (1) "The principles of the law of contracts apply to review of settlement agreements," *In re Estate of Harford*, 936 P.2d 48, 50 (Wash. Ct. App. 1997); and (2) "Under contract

ORDER – 4

law, a release is voidable if induced by fraud, misrepresenation or overreaching or if there is clear and convincing evidence of mutual mistake." *Nationwide Mut. Fire Ins. Co. v. Watson*, 840 P.2d 851, 856 (Wash. 1992).

**C. Governing Law on Effect of Fraud**

Despite the general rules cited *supra*, the precise legal principles that should apply to the facts of this case remain unclear. The parties fundamentally disagree on the contours of the governing law regarding the integration clause, the nature of Plaintiffs' instant suit, and the effect, if any, that the *nature* of Plaintiffs' FMC I suit has on the current litigation.

Defendants argue that under Washington law, the integration clause, coupled with the release in the Settlement Agreement, prevents Plaintiffs from claiming fraud in the inducement or similar dishonesty-based theories; they seek dismissal of Count One, causes of action (1), (2), and (4), and Count Two, cause of action (1), on this basis. (Defs.' Mot. 6–10.) Defendants also argue that the fraud presently claimed by Plaintiffs is just another iteration of the set of dishonesty allegations brought to state court in the settled FMC I suit, and is thus barred by *res judicata*. (*Id.* at 10–12.)

Plaintiffs respond by asserting that the fraud that *they* are talking about arose *after* they filed their FMC I suit, and that, as such, it is a new and separate harm that escapes the release and *res judicata*. (Pls.' Opp'n 15–17.) Plaintiffs claim that the alleged fraud induced them to settle on terms that they otherwise would not have agreed to; further, they may not have settled at all had they known what they later learned from Wattles about Defendants' alleged lies during discovery and negotiation of the settlement. (*Id.* at 20–22.) Plaintiffs also argue that, contrary to Defendants' characterization of the law, Washington law actually allows invalidation of a release obtained through fraud during discovery, and this provides them an avenue for the alternative theories for relief they have claimed in spite of the integration clause. (*Id.* at 10–20.)

//

ORDER – 5

1   Defendants rebut with a distinction between cases that involve arms-length transactions and cases
2   that begin with allegations of dishonesty (such as the claims brought in FMC I).  Defendants argue that
3   Plaintiffs could not reasonably rely on Defendants' discovery responses, as a matter of law, because of
4   the untrusting relationship between the parties, as evidenced by the nature of the original dispute, which
5   itself centered on dishonesty. (Defs.' Reply 1–3, 5–6.)

6   The problem is that neither party presents any clear rule of *Washington* law to resolve the above.
7   Plaintiffs' Washington cases are arguably distinguishable because they involve transactions for goods or
8   services, rather than situations more like the instant case of a claim for dishonest behavior followed by a
9   claim for fraudulent inducement of the settlement.[5]  Despite this aspect of the Plaintiffs' Washington
10  caselaw, however, the Washington cases cited by Defendants are unpublished, are only tenuously
11  relevant, or merely contain *dicta*.[6]

12  Because of the lack of clarity under Washington law, the parties are entitled to rely in this
13  litigation on law from other jurisdictions that they believe Washington courts would follow if presented
14  with the facts of this case.  They have done so in their briefing on this motion.  While Defendants'
15  argument that Delaware law should not apply due to the parties' choice-of-law clause specifically
16  excluding that state's law (Defs.' Reply 7) is correct, Plaintiffs have not *solely* relied on Delaware law in
17  constructing their opposition to Defendants' motion.  Similarly, Defendants have failed to present
18  authority any more persuasive at this stage of the litigation than that on which Plaintiffs rely.

---

[5] Defendants argue (Defs.' Reply 5–6) that Plaintiffs' reliance on *Coson v. Roehl*, 387 P.2d 541 (Wash. 1963), *McInnis & Co. Inc. v. Western Tractor & Equipment Co.*, 388 P.2d 562 (Wash. 1964), and *Maid O'Clover, Inc. v. Chevron USA Inc.*, No. CV03-3077 (E.D. Wash. 2005, Dkt. No. 340), is misplaced because the underlying disputes in those cases are distinguishable from the instant case.

[6] For instance, Defendants cite *Alcon Labs., Inc. v. Will Vision & Laser Ctrs., P.C.*, 2005 Wash. App. LEXIS 421 (Wash. Ct. App. 2005) (unpublished), *Goel v. Jain*, 259 F. Supp. 2d 1128, 1137–1139 (W.D. Wash. 2003) (Lasnik, J.) (finding no fraud on the merits before finding that a release was validly entered into), and *Guarino v. Interactive Objects, Inc.*, 86 P.3d 1175, 1189 (Wash. Ct. App. 2004) (*dicta* stating that the court "does not disagree" with an Eleventh Circuit rule that supports Defendants' position).

ORDER – 6

When ruling on a motion to dismiss, this Court may consider the face of the complaint, attachments thereto, and related court records. *See Kourtis v. Cameron*, 419 F.3d 989, 994, n.2 (9th Cir. 2005). The Court declines to convert the instant motion into one for summary judgment by looking further or by making any findings on the specific rules of law that govern the questions outlined here. In deciding this motion, the Court cannot determine which rules of law apply, because further factual development may change what law is applicable. The complex questions of law presented here are more properly reserved for summary judgment than are they decided on a motion to dismiss. Without further factual development to shed light on how the Court might characterize Defendants' discovery and settlement negotiation conduct (*i.e.*, as continuation of the conduct forming the basis of FMC I vs. as new conduct) and without further legal argument on summary judgment as to what the Washington law applicable to this case is, the Court cannot find as a matter of law that Plaintiffs have failed to state a claim. Nor can it determine whether *res judicata* applies. Dismissal at this early stage is inappropriate due to the unsettled law each side seeks to apply to the limited record[7] and the remaining factual issues that may be resolved or clarified in the course of this litigation. For these reasons, Plaintiffs are entitled to move forward with their claims on Count One, causes of action (1), (2), and (4), and Count Two, cause of action (1). Accordingly, Defendants' motion is DENIED as to Count One, causes of action (1), (2), and (4), and Count Two, cause of action (1).

**D.  Press Release Claims**

Defendants argue that Count One, causes of action (2) and (5) are attempts to enforce the Press Release (and the exhibit accompanying the settlement) and/or an "agreement to agree"[8] and therefore fail

---

[7] The record in FMC I may be extensive, but the particular factual issues relevant to this litigation were not necessarily the subject of the discovery conducted in the state court case.

[8] "Agreements to agree are unenforceable in Washington." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004). An "agreement to agree" is "'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.'" *Id.* (quoting *Sandeman v. Sayres*, 314 P.2d 428, 429 (Wash. 1957).

ORDER – 7

to state a claim. (Defs.' Mot. 12–13.) Plaintiffs respond that the Press Release is merely a summary of obligations independently found in the Settlement Agreement. (Pls.' Opp'n 22–23.) Further, Plaintiffs argue, the obligation of good faith and fair dealing obligates cooperation, regardless of the Press Release. Defendants rebut with the argument that Plaintiffs' *claims* in their Amended Complaint quote the language from the Press Release exhibit attached to the settlement, and therefore fail. (Defs.' Reply 8.) Defendants are correct about the source of the quoted language.[9]

However, cause of action (2) is for common law fraudulent statement of intent. Based on the factual allegations on the face of the complaint about the entire settlement negotiation process, this cause of action clearly covers more than just the quoted words in the Press Release exhibit. *See supra* note 9. Therefore, the Court need not rule on whether the quoted language constitutes an unenforceable "agreement to agree" as to this cause of action. Further, the substance of cause of action (2) survived the

---

[9] Cause of action (2) includes the following language:

> In the Settlement Agreement, Defendants promised that they would "cooperate with FMC[TI] in the future to make sure that FMC[TI]'s substantial investment in the water jet cutting industry is protected." Defendants had no intention of doing so. They wrongfully held a significant portion of that "substantial investment"—FMCTI's drawings—at the time they signed the Settlement Agreement, and were using them to compete with FMCTI. Defendants intended to continue using FMCTI's drawings, confidential business information and trade secrets to continue competing with FMCTI after the Settlement Agreement was signed. Because Defendants had no intention of keeping their promise, their promise was knowingly false and constituted a material misrepresentation of fact regarding Defendants' intent.

(Am. Compl. 10–11.) Cause of action (5) states the following:

> In the Settlement Agreement, Defendants agreed to "cooperate with FMC[TI] in the future to make sure that FMC[TI]'s substantial investment in the water jet cutting industry is protected." Defendants' retention and use of Plaintiffs' drawings constitute an on-going breach of that agreement.

(Am. Compl. 12.) The internally quoted language in Plaintiffs' Amended Complaint is exact language taken from the Press Release exhibit that is attached to the Settlement Agreement as Exhibit D.

ORDER – 8

motion to dismiss in the analysis *supra* regarding the effect of fraud on the validity of the contract, and the Court finds that this cause of action need not merely rely on the Press Release exhibit language. After quoting the Press Release, the Amended Complaint specifically discusses the signing of the Settlement Agreement and the overall mindset and conduct of Defendants as they settled the case (*i.e.*, their lack of "intent" to adhere to the spirit of the settlement as they simultaneously "held" drawings and signed the agreement). *See id.* The Court therefore declines to dismiss this cause of action, and Plaintiffs are GRANTED LEAVE TO AMEND Count One, cause of action (2) to articulate the scope of their claim in broader terms if they wish. Defendants' motion is therefore DENIED as to Count One, cause of action (2) on this basis as well.

Cause of action (5), on the other hand, *is* a statement of breach that relies for its textual basis on the Press Release exhibit attached to the settlement. It therefore must be dismissed, because the Press Release exhibit was not made a term of the contract. Count One, cause of action (5) is DISMISSED without prejudice, and Plaintiffs are GRANTED LEAVE TO AMEND it to attempt to state a valid claim for "breach of settlement agreement by failure to cooperate." Plaintiffs are advised that such a claim may not rely on text that was not made one of the contract terms and that it still may be subject to Defendants' arguments about "agreements to agree," which arguments the Court does not take up at this time.

### E. Statutes of Limitations

Defendants' arguments about the statutes of limitations as to Plaintiffs' FMC I claims sought to be revived in Count Two, causes of action (2)–(6) are not ripe, because the Court has not ruled on the threshold issues that would then demand an inquiry into the statutes of limitations: The Court has ruled neither on Plaintiffs' requests for rescission of the settlement (Count Two, cause of action (1)), nor on revival of the FMC I causes of action (Count Two, causes of action (2)–(6)). Pending resolution of the claims in Count One, discussed *supra*, and the possibility of reformation or rescission remedies later in this litigation, Plaintiff is entitled to keep the alternative claims in Count Two, including possible revival

ORDER – 9

of the FMC I claims. Because rescission and revival might not occur at all, there may be no need to reach the statutes of limitations questions in any event, and the Court declines to do so at this early stage. Therefore, Defendants' motion is DENIED as to Count Two, causes of action (2)–(6).

**F. Constructive Trust**

Defendants' final request for dismissal of Plaintiffs' constructive trust claim, found in Count One, cause of action (3), is based on the assertion that constructive trust is merely a remedy and not an independent cause of action. (Defs.' Mot. 16.) Defendants also assume the success of all of their other requests to dismiss and argue that because no claims will remain, no remedy should remain either. First, because Plaintiffs have kept all but one cause of action sought to be dismissed by Defendants, constructive trust is a valid remedy if they succeed on the merits of their claims. Second, Plaintiffs' Amended Complaint, Count One, cause of action (3), seeks a constructive trust due to *unjust enrichment* (Am. Compl. 11), and unjust enrichment *is* a valid cause of action under Washington law. *See, e.g., Kysar v. Lambert*, 887 P.2d 431, 439 (Wash. Ct. App. 1995). Further, Washington courts have recognized "causes of action" for "constructive trust" in contract cases. *See, e.g., Snedigar v. Hodderson*, 786 P.2d 781, 782 (Wash. 1990). Defendants' citation (Defs.' Mot. 16) to a California case to assert the contrary is unpersuasive. Therefore, Defendants' motion is DENIED as to Count One, cause of action (3).

**III. CONCLUSION**

For the reasons set forth above, Defendants' motion is DENIED in part and GRANTED in part as follows:

//

//

//

//

//

ORDER – 10

1. Defendants' motion is DENIED in part and GRANTED in part as to Count One:

   a. Defendants' motion is DENIED as to Count One, causes of action (1), (3), and (4);

   b. Defendants' motion is DENIED as to Count One, cause of action (2)—Plaintiffs are further GRANTED LEAVE TO AMEND Count One, cause of action (2); and

   c. Defendants' motion is GRANTED as to Count One, cause of action (5).  Count One, cause of action (5) is DISMISSED without prejudice, and Plaintiffs are GRANTED LEAVE TO AMEND Count One, cause of action (5).

2. Defendants' motion is DENIED as to Count Two:

   a. Defendants' motion is DENIED as to cause of action (1); and

   b. Defendants' motion is DENIED as to causes of action (2)–(6).

SO ORDERED this 8th day of December, 2005.

*[signature: John C. Coughenour]*

John C. Coughenour

United States District Judge

ORDER – 11