UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FMC TECHNOLOGIES, INC., and FMC FOODTECH, INC., successors-in-interest to DESIGN SYSTEMS, INC. and STEIN, INC., d/b/a STEIN-DSI, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES EDWARDS and PROCESSING EQUIPMENT SOLUTIONS, INC., <br><br> Defendants. | CASE NO. C05-946C <br><br> ORDER |

This matter comes before the Court on (1) Plaintiffs' Motion to Disqualify Defendants' Counsel (Dkt. No. 45) ("Pls.' Mot."), Defendants' Opposition (Dkt. No. 52) ("Defs.' Opp'n"), Plaintiffs' Reply (Dkt. No. 56) ("Pls.' Reply"), and Defendants' Surreply (Dkt. No. 59) ("Defs.' Surreply"); and (2) Darren Wattles's Motion for Leave to Intervene (Dkt. No. 49) ("Wattles Mot."), Defendants' Opposition thereto (Dkt. No. 54) ("Defs.' Opp'n to Wattles"), and Darren Wattles's Reply (Dkt. No. 55) ("Wattles Reply"). Having considered the papers submitted by the parties and finding oral argument unnecessary, the Court finds and rules as follows.

//

ORDER – 1

## I. BACKGROUND

Plaintiffs originally filed suit against Defendant Edwards and another individual, Darren Wattles, the founders of Defendant Processing Equipment Solutions, Inc., in King County Superior Court ("FMC I") for, *inter alia*, misappropriation of trade secrets. This claim was based on an allegation that these defendants stole comprehensive drawings of Plaintiffs' portioner[1] parts. However, when the FMC I defendants swore under oath that they did not have any of Plaintiffs' drawings and failed to produce any drawings during discovery, the parties chose to settle the state court suit. Apparently experiencing a change of heart, FMC I defendant Darren Wattles later approached FMC and disclosed that he had, in fact, downloaded the drawings at issue and delivered them to James Edwards. In light of this new information, Plaintiffs brought suit again, this time in federal court, invoking diversity jurisdiction. (*See* First Amended Complaint (Dkt. No. 19).) In the instant suit, Plaintiffs have sued James Edwards and PES. Darren Wattles is a witness, not a party. He now is aligned with Plaintiffs, not Defendants.

Plaintiffs' instant suit seeks relief under two alternative theories. Count One seeks to affirm the FMC I Settlement Agreement and obtain relief for fraud, conversion, unjust enrichment, and breach. Count Two, in the alternative, seeks total rescission of the FMC I Settlement Agreement and relief based on the original causes of action brought in FMC I. In the instant suit, a central factual dispute is whether the FMC I defendants lied during FMC I discovery; a central legal dispute is the effect of such conduct if it occurred.

Shortly after Plaintiffs filed their First Amended Complaint in this matter, Defendants moved to dismiss most of Plaintiffs' claims. This Court granted in part and denied in part that motion, declining to dismiss all but one of Plaintiffs' claims and granting Plaintiffs leave to amend their complaint (Order (Dkt. No. 42)), which Plaintiffs later did (*see* Second Amended Complaint (Dkt. No. 63)).

//

---

[1] Portioners are cutting equipment that use high pressure water jets to cut poultry, red meat, and fish into equal weight portions for resale at the wholesale retail level.

ORDER – 2

In the instant suit, Plaintiffs are represented by Philip McCune, Elizabeth Butler Kennar, Lawrence Locker, and Ralph Palumbo of Summit Law Group; Defendants are represented by Derek Newman and Roger Townsend of Newman & Newman; and witness Darren Wattles is represented by Robert Adolph of Adolph Law Group in his motion to intervene. In FMC I, the plaintiffs (FMC/DSI) were represented by Summit Law Group and both defendants (James Edwards and Darren Wattles) were represented by Newman & Newman. At issue on the instant motions is whether Newman & Newman's prior representation of Darren Wattles as a *defendant* in FMC I creates a conflict of interest, now that Mr. Wattles is a key witness (for Plaintiffs) in the instant case.

Essentially, Plaintiffs argue that Newman & Newman is necessarily adverse to its former client in the current suit—a substantially related matter—in violation of the Washington Rules of Professional Conduct, and therefore must be disqualified from representing Defendants. Plaintiffs argue that Newman & Newman's current representation violates that firm's duty of loyalty to Mr. Wattles. Mr. Wattles seeks to intervene to assert the same arguments and to disqualify his former counsel from representing Defendants in this action.

Defendants oppose the disqualification of Newman & Newman on the merits of the ethics challenge and for a number of other reasons, including alleging delay in bringing the disqualification motion and predicting prejudice to Defendants if the Court grants the motion. As to the ethics challenge itself, Defendants argue that Newman & Newman is *not* acting adverse to its former client in this matter, that this matter is *not* substantially related to FMC I, and that, in any event, Mr. Wattles has waived any protections that he may have had.

**II. ANALYSIS**

    **A. Standing / Motion to Intervene**

In opposition to the disqualification motion, Defendants assert that Plaintiffs lack standing to assert the alleged conflict of interest regarding witness Darren Wattles. (Defs.' Opp'n 9.) FMC maintains that it does have standing, and argues, alternatively, that a district court has the inherent power

ORDER – 3

to determine motions to disqualify, regardless of standing. (Pl.'s Mot. 3–4.) Apparently to disarm Defendants' standing objection, Darren Wattles has sought to intervene in this action, making himself a party for the limited purpose of objecting to his former counsel's representation of Defendants. (Wattles Mot.)

In general, the "doctrine of standing prohibits a litigant from raising another's legal rights." *Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032, 1055 (Wash. 1987) (citing *Allen v. Wright*, 468 U.S. 737, 750–51 (1984)). However, neither the United States Supreme Court nor the Ninth Circuit has addressed the particular question of whether the standing doctrine bars a nonclient party from moving to disqualify the opposing party's counsel on the grounds of a conflict of interest. This is the precise question at issue here, where the nonclient Plaintiffs seek to disqualify Defendants' counsel based on a conflict of interest regarding Darren Wattles—a nonparty, witness, and former client of Defendants' counsel.

One district court has noted that the majority view on this issue is that "only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client." *Coyler v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999). In delineating this view, the court in *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976), stated the general rule that "courts do not disqualify an attorney on the grounds of conflict of interest unless *the former client* moves for disqualification." (emphasis added). However, even the *Yarn Processing* court acknowledged the possibility of nonclient standing where an "unethical change of sides was manifest and glaring" or an ethical violation was "open and obvious," confronting the court with a "plain duty to act." *Id.* at 89. Similarly, the minority view is that a nonclient litigant may bring the motion to disqualify. *See Coyler*, 50 F. Supp. 2d at 970–71. Like the exception to the majority view, the minority view relies in part on the "court's well recognized power to control the conduct of the attorneys practicing before it." *Id.* at 970.

//

ORDER – 4

In addressing the standing question, the *Coyler* court held that a nonclient litigant "must establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III." 50 F. Supp. 2d at 971 (internal citation omitted). Further, where an

> ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation. In such a case, moreover, the prudential barrier to litigating the rights and claims of third parties should not stop a district court from determining the motion, because such a limitation would be overcome by the court's inherent obligation to manage the conduct of attorneys who appear before it and to ensure the fair administration of justice.

*Id.* at 971–72. Further, several district courts in the Ninth Circuit, including this one, have held that district courts have the inherent power to "protect the integrity of their processes" in the context of ethical disqualification motions. *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1563 (W.D. Wash. 1986); *see also Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796 (N.D. Cal. 2004); *Coyler*, 50 F. Supp. 2d 966. Thus, nonclient litigants may, under proper circumstances, bring motions to disqualify counsel based on conflicts of interest.

The Court finds that in the present case, Plaintiffs have shown that the ethical conflict at issue here sufficiently impacts the "just and lawful determination" of their claims and that the conflict involved is so intertwined with the current litigation that this Court must consider Plaintiffs' motion to disqualify Defendants' counsel. Here, defense counsel Newman & Newman's former client Mr. Wattles is not a party, but he is now the key witness for Plaintiffs, whereas in FMC I, he was a defendant, aligned with the position of Defendants in the instant litigation. Moreover, the current suit is inextricably linked to the FMC I litigation where Mr. Wattles was represented by Newman & Newman. For these factual reasons, the Court finds that Plaintiffs have met the standing requirement. Further, because the motion has merit, as discussed *infra*, the Court has a "plain duty to act."

Because the Court will consider Plaintiffs' motion to disqualify Newman & Newman, it is unnecessary for the Court to consider Mr. Wattles's request to intervene in this matter for the purpose of

ORDER – 5

moving to disqualify Newman & Newman. Further, intervention would unnecessarily complicate this lawsuit and the Court's consideration of the disqualification motion. Accordingly, the Court STRIKES Darren Wattles's Motion for Leave to Intervene and it will consider only Plaintiffs' motion for disqualification of Newman & Newman.

**B. Disqualification of Newman & Newman**

Defendants' Surreply raises an objection to new evidence cited in and declarations filed in support of Plaintiffs' Reply in support of the disqualification motion. (Defs.' Surreply.) The Court hereby STRIKES such new evidence presented by Plaintiffs (including the Supplemental Declarations of Kurt M. Bulmer (Dkt. No. 58) and Philip S. McCune (Dkt. No. 57)), and it will not consider such evidence or argument in ruling on the disqualification issue.

The Court acknowledges at the outset that disqualification is a drastic measure and that it must consider the danger of a motion to disqualify opposing counsel as a litigation tactic. *Lord Elec. Co.*, 637 F. Supp. at 1562. With those considerations in mind, this Court has a duty to examine charges of conflict of interest. *Id.* at 1560; *see also Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) ("The primary responsibility for controlling the conduct of lawyers practicing before the district court rests with that court.").

"In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court first refers to the local rules regulating the conduct of members of its bar." *Lord Elec. Co.*, 637 F. Supp. at 1560. Attorneys practicing in the Western District of Washington must abide by the "Washington Rules of Professional Conduct, as promulgated, amended, and interpreted by the Washington State Supreme Court . . . and the decisions of any court applicable thereto." Local Rules W.D. Wash. GR 2(e). Accordingly, the Washington Rules of Professional Conduct ("RPCs") will govern the disqualification analysis.

The conflict of interest alleged by Plaintiffs implicates Rule 1.9 of the RPCs. Rule 1.9 states the following in regard to former-client conflicts of interest:

ORDER – 6

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or
> (b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit.

WASH. RULES OF PROF'L CONDUCT R. 1.9. In determining whether a violation of Rule 1.9 requires disqualification, the burden of proof rests "upon the firm whose disqualification is sought." *Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134 (W.D. Wash. 1994) (citing "Comment 8[2] to Rule 1.9 of the similarly worded ABA Model Rules of Professional Conduct").

The RPCs' general rule as to conflicts of interest is generally relevant here too. Rule 1.7 provides, in part:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) The lawyer reasonably believes the representation will not be adversely affected; and
> (2) The client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure). When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

WASH. RULES OF PROF'L CONDUCT R. 1.7. While this rule focuses on current-client conflicts, it implicates former-client conflicts as well by its reference to limitations involving a lawyer's responsibilities to a third person, who may be a former client. Further, the ABA Comments to Rule 1.7 note that "a lawyer's duties of loyalty and independence may be materially limited by responsibilities to

---

[2] The ABA Model Rules of Professional Conduct and Comments are not binding in Washington, but they are "instructive" when interpreting Washington RPCs that are analogous to the ABA Model Rules. *Teja v. Saran*, 846 P.2d 1375, 1378 n.4 (Wash. App. 1993); *see also State v. Hunsaker*, 873 P.2d 540, 544–45 (Wash. App. 1994). Further, the WSBA Board of Governors has suggested that the Supreme Court adopt the official ABA Comments with some revisions applicable to the Washington RPCs. *See* WSBA Website, *at* http://www.wsba.org/lawyers/groups/ethics2003/default.htm; (Pl.'s Mot. 5 n.4.).

ORDER – 7

former clients under Rule 1.9." MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. 9 (2004). Moreover, specifically relevant to this case, "[u]nforeseeable developments, such as . . . the addition or realignment of parties in litigation, might create conflicts in the midst of a representation." *Id.* cmt. 5.

Because the firm of Newman & Newman is the subject of this motion, the Court notes briefly that Rule 1.10 of the RPCs addresses imputation of conflicts involving one lawyer to other lawyers in the firm and provides for a limited screening mechanism. If a lawyer is disqualified under 1.9, that disqualification is imputed to the firm by operation of Rule 1.10 unless certain requirements are met. Because Plaintiffs seek disqualification of the entire firm of Newman & Newman along with its individual attorneys, the Court need not apply Rule 1.10 to this case. No party argues that screening would be effective to remedy the conflict at issue here, nor does it appear from the facts that such screening is possible. Rule 1.10 is therefore inapposite to this analysis.

Rule 1.9(a) and (b) are "written in the disjunctive and, accordingly, an attorney may be disqualified from representing a client under either provision." *Hunsaker*, 873 P.2d at 545. Thus, Newman & Newman may be disqualified if either 1.9(a) or (b) so require. The Court begins with Rule 1.9(a).

Under Rule 1.9(a), the significant elements are (1) that the conflict involves a *former client*; (2) that the subsequent representation is *materially adverse* to the former client; and (3) that the matters are *substantially related*. WASH. RULES OF PROF'L CONDUCT R. 1.9; *see also Trone*, 621 F.2d at 998. Here, there is no question that Mr. Wattles is a "former client" of Newman & Newman, and Defendants have acknowledged as much in their papers on this motion. It is also clear that Mr. Wattles has not consented to his former lawyers' representation of Defendants. The relevant inquiry, therefore must focus on the second and third elements of Rule 1.9(a), both of which the parties strenuously dispute.

The question of whether the "matters" of FMC I and the instant suit are "substantially related" requires consideration of the nature of each dispute. Washington applies a "factual context" test to determine whether the matters are substantially related. *Hunsaker*, 873 P.2d at 543–44. The ABA

ORDER – 8

Comments to Rule 1.9 indicate that the "scope of a 'matter'" is fact-dependent, and that matters are substantially related if they "involve the same transaction or legal dispute." MODEL RULES OF PROF'L CONDUCT R. 1.9 cmts. 2, 3. Similarly, under Washington law, representations are substantially related "'if they involve the same client and the matters or transactions in question are relevantly interconnected.'" *Hunsaker*, 873 P.2d at 543 (quoting *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)). Thus, the "underlying question" as to a substantial relationship between the first and second lawsuits "is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a *changing of sides* in the matter in question." MODEL RULES OF PROF'L CONDUCT R. 1.9 cmt. 2 (emphasis added). The Washington Court of Appeals has noted that Rule 1.9(a)'s "prohibition against side-switching is based not only upon the duty prohibiting the disclosure of confidences, but also upon a duty of loyalty." *Teja*, 846 P.2d at 1378. The relevant inquiry then, must focus on whether Newman & Newman's representation of Mr. Wattles in FMC I as a defendant therein and Newman & Newman's subsequent representation of Defendants in the instant suit constitutes side-switching in factually intertwined lawsuits that implicates disclosure of confidences or breach of the duty of loyalty. The Court finds that it does.

The substantial relationship inquiry "does not require that the issues in the two representations be identical. The relationship is measured by the allegations in the complaint and by the nature of the evidence that would be helpful in establishing those allegations." *Trone*, 621 F.2d at 1000. This test is easily satisfied in the instant case. The central factual dispute in this lawsuit—whether Mr. Wattles participated in downloading and delivering trade secrets to Defendant Edwards and Defendant PES—is *exactly* the central factual dispute that existed in FMC I. The additional factual issues in the current lawsuit involve whether Mr. Wattles (and Defendants Edwards and PES) lied about such activity during the course of FMC I discovery. To that extent, there is *additional* conduct at issue in this lawsuit that was not the basis for FMC I. However, Defendants' hypertechnical argument (Defs.' Opp'n 9–11) that this "separate" or "additional" FMC I discovery conduct somehow makes this federal suit unrelated to

ORDER – 9

FMC I under the meaning of Rule 1.9 borders on incomprehensible. Defendants' allegedly fraudulent discovery conduct may be the basis for rescission of the FMC I Settlement Agreement and/or the causes of action for breach, fraud, and other "different" claims brought by Plaintiffs in the instant suit, but the underlying *dispute* is about the same conduct—portioner part trade secret misappropriation where PES allegedly benefitted at FMC's expense. Further, as to Mr. Wattles, Newman & Newman clearly has switched sides in the dispute.

The Court notes that the parties' reciprocal estoppel arguments—(1) by Defendants that Plaintiffs are "estopped" from now claiming that the two lawsuits are "the same" due to Plaintiffs' prior opposition to Defendants' *res judicata* dismissal argument and (2) by Plaintiffs that Defendants cannot now argue that the matters are "different" based on their earlier advocacy of the *res judicata* argument—are meritless. The *res judicata* inquiry is entirely different than the instant inquiry into whether the two lawsuits involve sufficiently related facts and parties to give rise to an ethical violation by counsel's breach of the duty of loyalty to a former client. Thus, the "substantially related" element is established.

Having determined that the matters of FMC I and the instant litigation are "substantially related" for purposes of Rule 1.9(a), the Court moves on to determine whether Newman & Newman now represents a party with interests "materially adverse" to its former client. The crux of the adversity inquiry centers on a lawyer's duty of loyalty. There is no requirement under Rule 1.9 (as Defendants suggest) that the former client be a *current party* to litigation in order to implicate the duty of loyalty. That Newman & Newman will be cross-examining its former client about *exactly* the same issues, regarding which Newman & Newman formerly represented Mr. Wattles as he maintained an *opposite* position, is enough to establish adversity. Parties are allowed to switch sides; lawyers are not. As the Third Circuit has put it, "[c]onflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999); *see also* MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. 6. This is particularly so when the cross-examination will involve the precise matters that were the subject of

ORDER – 10

the former representation.

Additionally, Newman & Newman has made clear that, in representing Defendants, it will seek to prove that Mr. Wattles—its former client and key witness for Plaintiffs—is *lying* in the instant litigation. Because Mr. Wattles has switched sides and Newman & Newman continues to represent Defendants, it must do this. Yet, Defendants attempt to flip this necessity on its head by arguing that they will, in fact be *helping* Mr. Wattles out by arguing that he *told the truth* in FMC I. This argument is a red herring and does nothing to address the chilling effect on current clients if lawyers are allowed to take adverse positions in relation to those clients once they become former clients. *See Trone*, 621 F.2d at 998 ("[The lawyer's] professional commitment is not furthered, but endangered, if the possibility exists that the lawyer will change sides later in a substantially related matter.") Similarly, that Newman & Newman still represents *Defendants* in this litigation does not bear on the firm's side-switching as to Mr. Wattles. *See Lord Elec. Co.*, 637 F. Supp. at 1562 ("The proper inquiry is whether the present representation is adverse to the former client, not whether the parties' interests were formerly adverse.")

For the foregoing reasons, the Court finds that Newman & Newman's continued representation of Defendants in this suit would violate Rule 1.9(a). Plaintiffs also allege a violation of Rule 1.9(b).

Rule 1.9(b) prohibits the use of "confidences or secrets relating to the representation to the disadvantage of the former client." Moreover, when the matters are substantially related, as here, "actual proof of disclosure of confidential information is not necessary." *Teja*, 846 P.2d at 1379. The Court therefore *presumes* that confidential information was disclosed. *Hunsaker*, 873 P.2d at 545; *see also Lord Elec. Co.*, 637 F. Supp. at 1561 (noting the *Trone* rule that a court will "presume that confidences have been divulged if the scope of the former representation encompasses issues raised in a later representation"). Further, "[i]t is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Trone*, 621 F.2d at 999; *see also Lord Elec. Co.*, 637 F. Supp. at 1561.

In the instant case, whether Mr. Wattles stole drawings from FMC is a "core issue," as it was in FMC I. Newman & Newman clearly consulted with Mr. Wattles to some degree about this issue during

ORDER – 11

the course of its representation of Mr. Wattles in FMC I. (*See, e.g.,* Pl.'s Mot., McCune Decl. Exs. F (Answer of Darren Wattles in FMC I), H (Darren Wattles's Responses to Requests for Admissions in FMC I).) Newman & Newman asserted the position in FMC I that Mr. Wattles did not steal drawings and that he was telling the truth when he denied stealing drawings during the course of FMC I. Newman & Newman will do the same in this lawsuit, which means that the firm will assert the position in the instant litigation that Mr. Wattles now is *lying* when he says he did indeed steal drawings. The question is whether asserting such a position implicates "confidences or secrets" divulged to Newman & Newman in its prior representation of Mr. Wattles.

Defendants argue that there is no attorney–client privilege attached to its consultation with Mr. Wattles in FMC I, and Mr. Wattles acknowledges that Defendant Edwards was present during all of his conversations with Newman & Newman, so there can be no privilege at issue here.[3] However, the protection of confidences and secrets under Rule 1.9(b) is not limited to attorney–client privileged information. While "confidence" is defined by the Washington RPCs as "information protected by the attorney–client privilege," "secret" is broader, referring to "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." WASH. RULES OF PROF'L CONDUCT *Terminology*. Further, the ABA position on Model Rule 1.6 indicates that confidentiality "applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." MODEL RULES OF PROF'L CONDUCT R. 1.6 cmt. 3. Here, proving that Mr. Wattles was telling the truth in FMC I (and thus that he is lying now) clearly implicates the "secrets" protection of Rule 1.9(b).

Defendants' argument that Mr. Wattles's position in FMC I is a matter of public record and

---

[3] Because it is clear that there is no attorney–privileged information at stake here, Defendants' argument about the "crime–fraud" exception to attorney–client privileged information is irrelevant. Therefore, the Court will not address this argument.

ORDER – 12

therefore cannot be the basis for disqualification is meritless. The public-record situation cited by Defendants (Defs.' Opp'n 9 (quoting *State v. Ramos*, 922 P.2d 193, 198 (Wash. App. 1996)) involves use of a criminal conviction to attack credibility where the former representation had *nothing* to do with that conviction. This is clearly not the situation here, where Newman & Newman's former representation has everything to do with the current incentive to discredit its former client. Because it is presumed that Newman & Newman possesses "confidences or secrets" of Mr. Wattles and there is no evidence to rebut this presumption as to "secrets," the Court finds that Newman & Newman's continued representation of Defendants in this suit would violate Rule 1.9(b) as well.

In finding that Newman & Newman's continued representation of Defendants would perpetuate a conflict of interest with respect to its former client, the Court emphasizes that this is not simply a matter of a lawfirm taking a later case that merely involves a former client—rather, it is about taking a later case that *depends on discrediting a former client on matters that were the subject of the former representation.* In the face of such a clear violation of the RPCs, the Court finds disqualification not only justified, but also essential.

Nor can Newman & Newman avoid the Rule 1.9 conflicts found here by retaining a separate lawfirm to cross-examine Mr. Wattles, as Defendants suggest in their opposition (Defs.' Opp'n 5). *See, e.g., United States v. Cheshire*, 707 F. Supp. 235, 240 (M.D. La. 1989). Having another lawyer cross-examine Mr. Wattles does not eliminate the conflict or address the loyalty issues raised by Newman & Newman presenting a case to this Court that centers on discrediting Mr. Wattles.

In addition to their substantive arguments regarding Rules 1.9(a) and (b), Defendants suggest that this Court should deny Plaintiffs' motion because of Plaintiffs' delay in bringing the motion. It is true that a waiver of a disqualification objection may be found if there is undue delay in bringing the motion. *See Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir. 1983) (undue delay where motion to disqualify was filed only 33 days before trial). The basis for Defendants' delay argument is that this lawsuit commenced in June 2005, yet Plaintiffs waited until December 2005 to file this motion when

ORDER – 13

they knew all along that Newman & Newman was representing Defendants and that Mr. Wattles was a key witness. Plaintiffs' explanation for the 6-month gap between the beginning of the lawsuit and filing this motion is that the issue of disqualification was not ripe until December 8, 2005, when this Court denied Defendants' second motion to dismiss. Had the Court granted the motion to dismiss claims seeking to rely on the testimony of Mr. Wattles (such as rescission and fraud), there would *be* no conflict to support a motion to disqualify. The Court agrees with Plaintiffs that prior to its motion-to-dismiss ruling, the disqualification issue would not have been ripe for consideration. Plaintiffs brought their motion two weeks after the Court's ruling. The Court can find no waiver by Plaintiff based on the timing of their motion.

Defendants' argument that they will be prejudiced by disqualification is meritless as well. Defendants have suggested that another lawfirm could cross-examine Mr. Wattles to avoid the Rule 1.9 conflicts, and Defendants already have retained another lawfirm to litigate yet another state court case that is ongoing and related to the instant litigation and to FMC I. These lawyers likely know about the complexities of the instant litigation and can learn what they do not already know. Discovery is in progress, and the trial is not scheduled until December 2006. Defendants have adequate time to substitute counsel. Had Newman & Newman recognized this conflict earlier, its continued representation would not have been an issue. Any prejudice Defendants face is due to their attorneys' decision to ignore a conflict of interest, not this Court's decision to grant Plaintiffs' motion. Nor does the Court find any evidence that this motion was brought as a litigation tactic. The timing of the motion is soundly justified and the ethical issues raised require disqualification.

//

//

//

ORDER – 14

### III. CONCLUSION

For the reasons set forth above, Darren Wattles's Motion for Leave To Intervene is STRICKEN and Plaintiffs' Motion to Disqualify Newman & Newman is GRANTED.

Newman & Newman is DIRECTED to advise Defendants to substitute counsel or provide the Court with *pro se* contact information.

SO ORDERED this 13th day of March, 2006.

John C. Coughenour
United States District Judge

ORDER – 15