UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FMC TECHNOLOGIES, INC., and FMC FOODTECH, INC., successors-in-interest to DESIGN SYSTEMS, INC. and STEIN, INC., d/b/a STEIN-DSI,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES EDWARDS and PROCESSING EQUIPMENT SOLUTIONS, INC.,<br><br>Defendants. | CASE NO. C05-946C<br><br>ORDER |

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment and Motion for Leave To File Third Amended Complaint (Dkt. No. 132), Defendants' Opposition thereto and Cross-Motion To Dismiss Litigation Fraud Claims (Dkt. Nos. 146, 147), Plaintiffs' Reply (Dkt. No. 148), Plaintiffs' Opposition to Defendants' Cross-Motion (Dkt. No. 155), and Defendants' Reply (Dkt. No. 161). Having considered the papers submitted by the parties on these cross-motions and finding oral argument unnecessary, the Court finds and rules as follows.

//

//

ORDER – 1

## I. BACKGROUND

The facts of this case are summarized in various Orders of this Court. (*See, e.g.*, Orders (Dkt. Nos. 7, 42, 109, 113, 188).) Boiled down, Plaintiffs now seek relief from their settlement of a prior trade-secret lawsuit ("FMC I") based on claims that the defendants in that state court suit fraudulently induced the settlement. At issue on the instant cross-motions is whether Defendants may assert the litigation privilege as to their conduct in FMC I to bar Plaintiffs' fraud-based claims in the instant lawsuit.

Particular to the issues raised by the instant motions, Plaintiffs allege that, after Defendants stole Plaintiffs' trade secrets and the FMC I litigation commenced, Defendants embarked on a separate scheme to defraud Plaintiffs, ultimately securing a settlement of FMC I based on such fraud. The specific fraudulent activity Plaintiffs allege includes: covering up actual evidence of the trade-secret theft; destroying such evidence; disguising such evidence; fabricating false evidence by generating fake "engineering" drawings solely for use in FMC I discovery; and then producing this incomplete, altered, or wholly fabricated evidence during the FMC I discovery period. In addition to tampering with and fabricating evidence, Plaintiffs allege that Defendants lied during depositions and in response to written discovery requests. The Court will incorporate additional facts and procedural history as relevant to the analysis *infra*.

## II. LEGAL STANDARD

Plaintiffs have styled their motion for a declaration that Defendants may not pursue a litigation fraud defense as a motion for summary judgment. Defendants agree that the question before the Court is an issue of law, but suggest that the matter can be decided without resort to material beyond the allegations in Plaintiffs' Second Amended Complaint. Accordingly, Defendants' cross-motion is styled as a motion to dismiss Plaintiffs' fraud-related claims for failure to state a claim upon which relief can be granted, as well as a motion for judgment on the pleadings. Plaintiffs counter that Defendants' cross-motion has been converted to a motion for summary judgment because both parties have cited facts outside the Second Amended Complaint. Accordingly, Plaintiffs maintain that both parties' motions are

ORDER – 2

summary judgment motions.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

A Federal Rule of Civil Procedure 12(c) "[j]udgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Honey v. Distelrath*, 195 F.3d 531, 532–33 (9th Cir. 1999). Similarly, the Court may dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted only if it "appears beyond doubt" that the pleading parties "can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In deciding a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the pleading parties. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). Dismissal is warranted "only if it appears to a certainty that [the pleading parties] would be entitled to no relief under any state of facts that could be proved." *Id.* Despite the liberal standard, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). When ruling on a motion to dismiss, this Court may consider the face of the complaint,

ORDER – 3

attachments thereto, and related court records. *See Kourtis v. Cameron*, 419 F.3d 989, 994, n.2 (9th Cir. 2005). If a Court does not exclude evidence submitted by the parties beyond these parameters, a Rule 12(b)(6) or 12(c) motion is converted into a Rule 56 motion. FED. R. CIV. P. 12(b)–(c).

Here, the parties' motions are reciprocal, seeking opposite paths of relief contingent on the resolution of a single legal issue: whether the litigation privilege applies here to bar Plaintiffs' fraud-related claims. The essential questions for the Court to answer are issues of law. Moreover, the pleadings and the materials before the Court on the instant motions are sufficient to provide a factual description upon which the Court can rest a judgment as a matter of law. The Court need not make specific findings of fact as a prerequisite to framing the factual scenario at issue here as it relates to the pertinent legal issue. Rather, the parties agree to the basic set of facts or, at the very least, the factual allegations that must exist to support Plaintiffs' litigation fraud theory or Defendants' litigation privilege defense. The Court's focus is not on which issues of fact remain for trial. Instead, its focus is on which legal theories may survive given the facts alleged. Accordingly, for the purposes of determining the instant motions, the evidentiary distinctions between Rule 56, Rule 12(b)(6), and Rule 12(c) are not as important as their common goal of determining whether one party must prevail as a matter of law. The Court now turns to that question.

**III.   ANALYSIS**

The Court has already determined the generally applicable law governing this action: (1) "The principles of the law of contracts apply to review of settlement agreements," *In re Estate of Harford*, 936 P.2d 48, 50 (Wash. Ct. App. 1997); and (2) "Under contract law, a release is voidable if induced by fraud, misrepresentation or overreaching or if there is clear and convincing evidence of mutual mistake." *Nationwide Mut. Fire Ins. Co. v. Watson*, 840 P.2d 851, 856 (Wash. 1992). (*See* Order (Dkt. No. 42) 4–5.) The nine elements of fraud are: (1) representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person

ORDER – 4

to whom it is made; (7) the person's reliance on the truth of the representation; (8) the person's right to rely upon it; and (9) the person's consequent damage. *Sigman v. Stevens-Norton, Inc.*, 425 P.2d 891, 895 (Wash. 1967). At issue here are "misrepresentations" made in the course of litigating FMC I.

This Court must determine whether, as a matter of law, (1) the facts of this case require a finding that Defendants' alleged perjury and dishonest litigation conduct in FMC I falls within the scope of the "litigation privilege" and (2) whether, despite any such privilege, such conduct is actionable in this lawsuit for fraudulent inducement of a settlement because it falls within the "greater actionable conspiracy" exception to the litigation privilege. Plaintiffs argue that the privilege does not apply, and if it does, that the exception also applies. Either way, Plaintiffs' position is that Defendants cannot assert the litigation privilege. Conversely, Defendants argue that the privilege is "absolute," and they dispute the applicability of the exception.

The Court begins by noting that, while Washington courts have not reached the precise question of whether the litigation privilege applies to bar a claim for fraudulent inducement of a settlement, there exists thoroughly sufficient guidance as to how this Court should approach the privilege issue in the instant case.[1]

The "litigation privilege" is synonymous with the widely-recognized rule that there is no civil cause of action for perjury. Washington law clearly incorporates this rule. *Platts, Inc. v. Platts*, 438 P.2d

---

[1] Into their argument about whether there is a "clear rule" governing the instant case, the parties have woven a secondary dispute about the power of this Court to interpret and apply Washington law. However, the Ninth Circuit has noted:

> Federal courts are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy. Were we able to invoke only clearly established state law, litigants seeking to protect their rights in federal courts by availing themselves of our diversity jurisdiction would face an inhospitable forum for claims not identical to those resolved in prior cases.

*Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875, 879 (9th Cir. 1987). This Court is guided accordingly.

ORDER – 5

867 (Wash. 1968) (no civil cause of action for perjury); *Dexter v. Spokane County Health Dist.*, 884 P.2d 1353, 1354–55 (Wash. Ct. App. 1994) (citing multiple jurisdictions' adoption of the rule). Nor is there a cause of action in Washington for conspiracy to commit perjury. *Platts*, 438 P.2d at 871–72. In clarifying this point, the *Platts* court held that a litigant cannot illusorily frame perjury as a conspiracy to get around the general rule. *Id.* Put one way, then, the question for this Court is whether Plaintiffs' fraud claims amount to a civil cause of action for perjury in FMC I. To answer this question, the Court now turns to the contours of the litigation privilege and the "larger actionable conspiracy" exception to that privilege.

The *Restatement (Second) of Torts* sets forth the following basic definition of the litigation privilege:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

RESTATEMENT (SECOND) OF TORTS § 588 (1977). As is clear from this definition, the original scope of the privilege was to protect witnesses from subsequent defamation lawsuits by disgruntled interested parties. The Supreme Court of Washington extended the scope of the privilege, however, in *Bruce v. Byrne-Stevens & Assocs.*, 776 P.2d 666 (Wash. 1989). There, the court found that the purpose of the rule—"encouraging full and frank testimony"—supported extension of the privilege to expert witnesses. *Id.* at 667–70. Moreover, the *Bruce* court found the immunity not limited to precluding defamation cases. *Id.* at 670–72. Instead, the privilege was extended in *Bruce* to preclude a professional negligence action against an engineer who had served as an expert witness in a previous action. The court held the engineer's professional conduct indistinguishable from his testimony for the purpose of applying the privilege. *Id.* at 672–73. The expansion of the privilege had its limitations, however. The Supreme Court of Washington later held that the privilege available to prevent professional negligence actions was not similarly available to prevent professional disciplinary proceedings following expert witness testimony. *Deatherage v. State Examining Bd. of Psychology*, 948 P.2d 828 (Wash. 1997). Thus,

ORDER – 6

essential to defining the scope of the privilege are public policy considerations, "the most important of which [is] 'to preserve the integrity of the judicial process by encouraging full and frank testimony.'" *Id.* at 831 (quoting *Bruce*, 776 P.2d at 667).

The law of the "larger actionable conspiracy" exception also adds dimension to this general rule privileging litigation conduct. In *Dexter*, the Washington Court of Appeals described the exception as applicable only when there is a larger actionable wrong that extends beyond previously litigated conduct. 884 P.2d at 1355. In contrast are situations where a second lawsuit is solely about perjury in a first lawsuit. In the words of the *Dexter* court, a cause of action for perjury alone would result in many cases being tried "at least twice; first on the merits and then to see who lied at trial." *Id.* Indeed, there are critical policy reasons for the bar against civil causes of action for perjury, including fostering finality in litigation and reducing the costs of suit, as well as encouraging frank witness testimony by prohibiting subsequent litigation. The larger actionable conspiracy exception, on the other hand, explicitly provides a remedy for misuse of the court system to work a greater wrong. The crux of the distinction between cases governed by the general rule and cases governed by the exception is whether the scope of the second lawsuit is the same as or broader than the scope of the first lawsuit. The parties agree on this basic point. They vehemently disagree, however, about the category into which the instant case fits.

The parties extensively quote and refer to a recent Tennessee case analyzing the larger conspiracy exception—*Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62 (Tenn. 2001). Because *Brown* goes into some useful detail that *Dexter* does not, the Court will address it before returning to Washington's caselaw. In *Brown*, the plaintiff brought a claim for fraud and civil conspiracy to commit fraud after her ex-husband had testified about his income in a previous child support hearing in a different court. The defendant in the second lawsuit raised the specific argument that because the plaintiff's fraud-based claims depended for their establishment on the defendant's testimony in a prior judicial proceeding, those claims must be dismissed due to the litigation (or "testimonial") privilege. *Id.* at 65–66. However, the Tennessee Court of Appeals found that the larger actionable conspiracy exception applied in *Brown* and

ORDER – 7

therefore that the plaintiff could pursue her fraud claims. The Supreme Court of Tennessee affirmed that decision, providing a discussion of the privilege and the exception that is particularly relevant to the instant case.

Citing a plethora of cases from other jurisdictions where the litigation privilege is recognized, including Washington's *Bruce* case, the *Brown* court discussed several policies behind the privilege, also noted *supra*, before moving on to discuss the larger actionable conspiracy exception. As in Washington, the *Brown* court noted that the exception does not apply when a witness "merely conspires to give perjured testimony." 42 S.W.3d at 73. More specifically, "[s]ince committing perjury itself does not destroy the privilege, a rule that conspiring to commit perjury will destroy it makes little sense, or, as we have previously stated, 'it cannot be that a conspiracy to do a thing is actionable when the thing itself would not be.'" *Id.* at 73 (quoting *Felts v. Paradise*, 158 S.W.2d 727, 729 (Tenn. 1942)). The *Brown* court thus defined the exception in terms of the scope of the privilege, noting that the exception applies only "where the conspiracy is to commit some wrong *other than perjury*, and the conspirators use the judicial system to help accomplish their plan." *Id.* at 73 (emphasis added). This is exactly the rule expressed by the Washington courts in *Platts* and *Dexter*. In *Platts*, the court was unconvinced of the validity of a claim of more than perjury alone when the *only* object of the alleged "conspiracy" was to commit perjury. 438 P.2d at 871–72. In contrast to *Platts* are cases such as *Brown* where perjury is but one element of a larger conspiracy. Moreover, Washington courts have explicitly noted this distinction in discussion of the larger actionable conspiracy exception. *Dexter*, 884 P.2d at 1354–55.

Significantly, the *Brown* court acknowledged that, absent any applicable carved-out exceptions, the litigation privilege would bar a fraud claim that depended for one of its elements on litigation conduct. 42 S.W.3d at 73–74. However, because the larger actionable conspiracy exception envisioned the facts of *Brown*, the fraud claim could survive. *Id.* at 74. It is here that the *Brown* court, due to the facts of that case, answered a more specific question than the *Platts* or *Dexter* courts could reach—and a question going straight to the fraud claim presented here. The *Brown* court specifically rejected the

ORDER – 8

defendant's argument that the plaintiff's fraud claim (and therefore her conspiracy to commit fraud claim) "collapses" due to the fact that the only misrepresentation on which she could base her fraud claim occurred *in litigation*. 42 S.W.3d at 72. In other words, the defendant's argument went, because one critical element of fraud could be established only by reference to an act in litigation, the privilege absolutely prohibited such a claim. Defendants have made precisely this argument—specifically identified and rejected by the *Brown* court—here. Defendants maintain that the *only* potentially actionable misrepresentations alleged are testimonial—*i.e.*, deposition testimony or discovery production—and therefore privileged. Because Plaintiffs' fraud claims cannot exist without relying on these misrepresentations that occurred in litigation, Defendants argue that the privilege bars the claims. However, Defendants' assertion of this position by way of referencing Plaintiffs' use of *Brown* (Defs.' Reply 8) is incomprehensible because the holding in *Brown* endorses the opposite conclusion. Defendants' logic is unconvincing for the same reasons that the *Brown* defendants' argument was unconvincing. The larger conspiracy exception operates to render otherwise privileged conduct actionable. The very impact of the greater actionable conspiracy exception is to allow a suit based on litigation conduct where the scope of the second suit exceeds the scope of the first suit.

      Here, the litigated claim is the initial trade secret theft. Though related, stealing the trade secrets in the first instance was not part of the larger conspiracy Plaintiffs allege. As Plaintiffs' version of the facts goes, the larger conspiracy—accomplished via fraud—was covering up the trade secret theft and unfairly obtaining legal rights to continue using those secrets by settling FMC I. Misrepresentations in litigation were essential to accomplishing this goal. While discovery responses and deposition testimony generally are covered by the litigation privilege, when used to effect a larger wrong, such litigation conduct is exactly what the larger actionable conspiracy exception was designed to encompass. If the Court were to accept Defendants' position—that the exception cannot apply if litigation conduct also happens to be an element of the subsequent claim—any potential defendant could avoid liability for fraudulent litigation conduct as long as such conduct also constituted an element of a larger, previously

ORDER – 9

unlitigated wrong. Indeed, under Defendants' logic, a claim for fraudulent inducement of a settlement reached after a lawsuit is filed could never exist because the elements of such a claim cannot be established without reference to litigation conduct.

In support of their argument that the conduct at issue in this lawsuit is absolutely privileged, Defendants rely heavily on seemingly sweeping Washington court statements such as "[t]he defense of absolute privilege or immunity avoids all liability," *McNeal v. Allen*, 621 P.2d 1285, 1286 (Wash. 1980), and "[a]ll witnesses are immune from all claims arising out of all testimony," *Dexter*, 884 P.2d at 1355. While these statements may sound simple enough in a vacuum, the contexts in which they were made reveal that these "rules" are not as easily transferrable to the instant case as Defendants argue. *McNeal* was decided in 1980 before the litigation privilege was extended beyond the defamation context. The pronouncement there that the litigation privilege "avoids all liability" is therefore limited not only by this historical fact, but also by its placement in the *McNeal* court's analysis—embedded in rules of law about defamation. The defamation context clearly qualifies "all liability."[2] Similarly, while the *Dexter* decision by the Washington Court of Appeals came after the Washington Supreme Court's extension of the litigation privilege to contexts beyond defamation, the *Dexter* court's pronouncement that "all witnesses are immune from all claims arising out of all testimony" cites only *Bruce*. As described *supra*, *Bruce* involved the discrete question of expert witnesses and post-litigation suits for professional negligence. The *Dexter* court's extrapolation is therefore less sweeping when considered in the context of the supporting cited caselaw. The Court is unconvinced that *McNeal* and *Dexter* constitute in Washington law a "well-established absolute privilege against liability for statements made in litigation." (Defs.' Opp'n & Cross-Mot. 4.) Moreover, the privilege is clearly *not* absolute in light of *Dexter*'s

---

[2] Like *McNeal*, *Platts* was decided prior to the extension of the litigation privilege beyond the defamation context. The *Platts* court's statement of the general rule against a cause of action for perjury is thus limited in the same way as *McNeal*'s statement that the litigation privilege avoids all liability. Yet *Platts* is useful for the comparison it makes between causes of action resting on perjury alone and causes of action resting on more.

ORDER – 10

acknowledgment of the larger actionable conspiracy exception as part of its analysis.

Nevertheless, the *Dexter* court found the exception inapplicable on its facts. Defendants argue that the instant case is practically identical to *Dexter* in all salient respects. Because it is the only Washington case specifically discussing the larger actionable conspiracy exception, the Court turns to it next. *Dexter* involved a first lawsuit for fraud in connection with a real estate sale. One issue litigated in the first lawsuit was the adequacy of the septic system. The holding in the first lawsuit was that there was a failure of proof of fraud with respect to the septic system. After later discovering that the defendant in the first lawsuit had lied in testimony about the septic system, the plaintiff filed a second suit for fraud in the context of the earlier action. *Id.* at 1354. The *Dexter* court held that the second suit went no further in scope than the first lawsuit—the quality of the septic system had already been litigated and the issue was *res judicata*. *Id.* at 1355. As the parties have characterized it, *Dexter* involved a second lawsuit that was merely the previously litigated claim "plus perjury." While they agree about this characterization of *Dexter*, they absolutely disagree about whether the instant case is sufficiently analogous to *Dexter* to force the same result here.

The Court finds that the instant case is distinguishable from *Dexter* for the following reasons. First, FMC I was a suit for trade secret theft. This claim was litigated to its conclusion in FMC I by settlement of that suit. The instant suit is Plaintiffs' second, and, while related to FMC I, it is not a suit for trade secret theft "plus perjury." Rather, Plaintiffs are claiming fraudulent inducement of a settlement—partially achieved by fabricating evidence, providing deliberately deceptive discovery responses, and covering up the original trade secret theft. Clearly, this alleged conduct arose after the original trade secret cause of action was filed. Further, as this Court has previously noted, if Plaintiffs prove their allegations, this case is not barred by *res judicata* because the conduct at issue here is entirely *separate* from the original trade secret theft. (*See* Order (Dkt. No. 42).) Therefore, the *Dexter* court's conclusion that the second lawsuit was barred by *res judicata* is a critical difference between it and the instant case. In *Dexter*, the court found that the plaintiff's "only claim" was for fraud in misrepresenting

ORDER – 11

the quality of the septic system at the time of the sale and that has previously been litigated." 884 P.2d at 1355. In contrast, Plaintiffs in the instant case are claiming fraud for the first time, based on facts that *could not* have formed the basis of the original trade secret lawsuit. The *Dexter* defendants' lies were the basis for the first lawsuit, such lies were repeated in testimony in that litigation, and then the same lies were again attacked in the second lawsuit. In contrast, the instant case involves alleged lies that initially occurred *after* the first lawsuit was filed. Therefore, such conduct was not "litigated to a conclusion" in FMC I within the meaning of *Dexter*.

The Court rejects Defendants' position for an additional reason. The public policy concerns behind providing witnesses (or parties) the litigation privilege in the first instance militate against protecting the conduct at issue here. The Supreme Court of Washington has explicitly identified the policies behind the litigation privilege. It "is a judicially created privilege founded upon the belief that the administration of justice requires witnesses in a legal proceeding to be able to discuss their views without fear of a defamation lawsuit." *Deatherage*, 948 P.2d at 830. Moreover, the "privilege of absolute witness immunity creates an 'extraordinary breadth' of protection and should not be extended absent the existence of compelling public policy justifications." *Id.* Encouraging frank, candid, honest witness testimony without fear of future "perjury" litigation is precisely the policy goal behind the privilege that will *not* be accomplished if the Court now protects, in the name of the litigation privilege, the evasive, fabricated, and dishonest testimonial conduct that allegedly occurred here. If events occurred as Plaintiffs allege, Defendants' conduct extended beyond perjury and into the realm of accomplishing a wrong greater than perjury alone. Plaintiffs must prove far more than deceit (perjury) to prove fraudulent inducement of the FMC I settlement. The policy goals preventing perjury litigation—even to the effect of protecting lying witnesses—fall short where the second litigation is not just about perjury.

Finally, extending the privilege to cover conduct that clearly falls into the larger conspiracy exception would be exactly the sort of "enlargement" of Washington law that Defendants have cautioned this federal court against. All settlements are not now vulnerable to attack by virtue of this ruling.

ORDER – 12

Rather, entirely consistent with Washington law, only those settlements induced by fraud may be attacked. The important public policy of fostering finality of settlements is not absolute. Settlements, like other contracts in Washington, may be voidable if induced by fraud. Fraud must be pled with particularity and it must be proven by clear, cogent, and convincing evidence. These are higher standards than those applicable to most civil claims. Fraudulent inducement of settlement claims are now no more viable and no easier to prove than they were prior to this ruling. Instead, this Court has merely declined to write these claims out of Washington law, which is what would result from application of the litigation privilege in spite of Washington law's acknowledgment of the larger actionable conspiracy exception. Here, the facts clearly call for application of the exception and not the privilege.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that, as a matter of law, the facts alleged in this lawsuit preclude application of the "litigation privilege" and Defendants may not raise such privilege as a defense to Plaintiffs' fraud claims. Plaintiffs' Motion for Summary Judgment is GRANTED in its entirety and Defendants' Cross-Motion to Dismiss is DENIED in its entirety. Plaintiffs are granted leave to file their Third Amended Complaint and must post it on the Court's electronic docket within 3 days of the date of this Order.

SO ORDERED this 27th day of November, 2006.

*John C. Coughenour*
John C. Coughenour
United States District Judge

ORDER – 13