UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FMC TECHNOLOGIES, INC., and FMC FOODTECH, INC., successors-in-interest to DESIGN SYSTEMS, INC. and STEIN, INC., d/b/a STEIN-DSI,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES EDWARDS and PROCESSING EQUIPMENT SOLUTIONS, INC.,<br><br>Defendants. | CASE NO. C05-946C<br><br>ORDER |

This matter comes before the Court on Plaintiffs' Motion To Quash Subpoena and To Grant Protective Order (Dkt. No. 212), Defendants' Opposition (Dkt. No. 215), and Plaintiffs' Reply (Dkt. No. 218). Having considered the papers submitted by the parties and finding oral argument unnecessary, the Court finds and rules as follows.

I.    **BACKGROUND AND FACTS**

As explained in multiple prior Orders of this Court (Dkt. Nos. 7, 42, 109, 113, 188, 197, 203), the instant suit seeks relief for the alleged fraudulent inducement of the settlement of an earlier state court trade-secret lawsuit ("FMC I") as well as breach of that settlement. Plaintiffs were represented in FMC I

ORDER – 1

by Summit Law Group, and in particular, Elizabeth R. Kennar, who negotiated the settlement with FMC I defense counsel Newman & Newman. In the instant litigation, Summit Law Group again represents Plaintiffs, with attorneys of record Philip S. McCune, Ralph H. Palumbo, Rex C. Browning, Lawrence C. Locker, and Elizabeth R. Kennar. Defendants in this litigation now seek to depose Ms. Kennar.

FMC I was filed in 2001 and settled in 2003. The FMC I defendants took the position that they did not steal trade secrets from Plaintiffs. A key witness in the instant case for Plaintiffs is Darren Wattles, who was a defendant in FMC I. Throughout FMC I, Mr. Wattles maintained the position that he had not downloaded proprietary information, but he changed his story in March of 2005, confessing that he had downloaded the drawings and that he and others had engaged in dishonest conduct during FMC I. The instant lawsuit commenced in May of 2005. Particularly relevant to the instant motion are several events that occurred in 2003, just before FMC I settled.

In January of 2003, a meeting occurred where Mr. Wattles and Defendant Edwards stated that they did not steal Plaintiffs' trade secrets. Plaintiffs claim that these statements fraudulently induced them to settle FMC I. A critical element of this claim requires proof that Plaintiffs' reliance was reasonable. Defendants seek to depose Ms. Kennar to explore Plaintiffs' state of mind at the time of settlement, citing two letters containing language that suggests that Plaintiffs did not actually believe the FMC I defendants' denials of the trade secret theft. Specifically, on March 4, 2003, Ms. Kennar authored a letter to opposing counsel Newman & Newman as part of ongoing settlement negotiations, which stated:

> FMC believes that Defendant Wattles copied more than 140 confidential and proprietary drawings from his computer just days prior to resigning. FMC also believes that several of the hand drawings produced by Defendant Wattles were made by copying FMC confidential and proprietary drawings. This was detailed in Defendant Wattles'[s] deposition where he claimed to have made drawings by reverse engineering the part in the field. The problem of course is that Defendant Wattles'[s] drawings were exact replicas of the FMC confidential and proprietary drawing—but *not* the part in the field. While some of the parts could be reverse[] engineered by a reasonably competent machinist after some period of time, Defendant Wattles'[s] misappropriation allowed an upstart company with minimal, if any, operating capital to offer several hundred competitive parts to FMC's customers within weeks of opening—not the several months or years it would have taken had PES actually reverse engineered those parts.

ORDER – 2

(Pls.' Mot., McCune Decl. Ex. A ("March 4, 2003 Letter") at 1–2 n.1.)  Then on March 10, 2003, Ms. Kennar sent Newman & Newman another letter, stating that "[a]s explained as early as October, 2002, FMC believes that the parts listed in the FIOS report were copied by Darren Wattles in violation of RCW 19.108 et seq, FMC's Code of Ethics and Mr. Wattles'[s] duty of loyalty" and that "FMC believes the parts identified in Exhibit A [attached to the letter] constitute trade secrets and have been misappropriated by Darren Wattles and Jim Edwards."  (*Id.* Ex. A ("March 10, 2003 Letter") at 1.)

Moreover, in deposition testimony in the instant litigation, Plaintiffs' representatives have suggested that Ms. Kennar's representations in these letters were not accurate statements of their state of mind at the time.  (*Id.* Ex. B (Dep. of Steve Smith) at 60:14–21 ("Q. But you disavow the truthfulness of two of the statement she makes in Footnote 1 [of the March 4, 2003 letter].  Is that right?  A. It is—FMC, sentence 2, and the last sentence.  I don't know what number it is, were not an accurate reflection of what FMC thought at that point in time."); *see also* Defs.' Opp'n, Wilkinson Decl. Ex. (Dep. of Jeffrey Simoneau) at 51–52, 55–56.)  Defendants also emphasize that another FMC representative has testified in the instant litigation that he did not know about the nonreliance/merger clause in the settlement contract.  (Defs.' Opp'n, Wilkinson Decl. Ex. (Dep. of Jeffrey Simoneau) at 48.)

On the instant motion, the Court must determine whether Defendants may depose Ms. Kennar, and if so, on what basis and about which topics.

## II. ANALYSIS

Plaintiffs move pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii) for an order quashing the subpoena issued to Ms. Kennar.  Rule 45(c) provides for an order quashing a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies."  FED. R. CIV. P. 45(c)(3)(A)(iii).  In addition, Plaintiffs request a protective order preventing the deposition of Ms. Kennar pursuant to Rule 26(c), which permits absolute and partial limitations on certain discovery in appropriate circumstances.  *Id.* R. 26(c).  In general, depositions may be conducted of "any person"; attorneys are not

ORDER – 3

generally exempt. *Id.* R. 30(a)(1); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 246–47 (D. Kan. 1995). Nor is an attorney protected from discovery simply because she is counsel in a given matter. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The burden is on the party seeking the deposition to show the propriety of and need for deposing opposing counsel. *Id.*; *Am. Casualty Co. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995). Thus, the issues are whether a deposition of opposing counsel under the circumstances presented here is appropriate, and if so, the extent to which any applicable privileges apply or have been waived.

*Shelton v. American Motors Corp.*, 805 F.2d 1323, is "generally regarded as the leading case on attorney depositions." *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998); *see also Am. Casualty Co.*, 160 F.R.D. at 585–91 (applying *Shelton*). Under *Shelton*, opposing counsel's deposition may be taken if the party seeking the deposition has demonstrated that (1) "no other means exist to obtain the information than to depose opposing counsel," (2) "the information sought is relevant and nonprivileged," and (3) "the information is crucial to the preparation of the case." 805 F.2d at 1327.

Defendants argue that *Shelton* does not apply to the instant case, because, while Ms. Kennar is the attorney of record in the instant case, their proposed deposition inquiry regards only the concluded FMC I litigation. The applicability of *Shelton* in subsequent litigation was analyzed in *Pamida v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002). The *Pamida* court held that the purpose of the *Shelton* rule—protecting litigation strategy—was not implicated by the discovery proposed in *Pamida*, because the inquiry of current counsel would relate to concluded litigation. *Id.* at 729–31. The *Pamida* court reasoned that "*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Id.* at 730. The *Pamida* court further explained that "[i]n such circumstances, the protection *Shelton* provides to

ORDER – 4

opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case." *Id.*

Plaintiffs contend that *Shelton* applies and that *Pamida*'s analysis does not fit the situation at hand. In support of this position, Plaintiffs cite, *inter alia*, this Court's characterization of FMC I and the instant litigation as "substantially related" within the meaning of Washington Rule of Professional Conduct 1.9. (March 13, 2006 Order (Dkt. No. 113) 9–10.) The Court made that determination in evaluating FMC I defense counsel's side-switching with respect to former client Darren Wattles. However, that the Court found the two suits to be related in that particular analytical context does not dictate a finding here that FMC I is synonymous with the instant litigation for the purposes of *Shelton*. As the Court noted in its March 13, 2006 Order, both Plaintiffs and Defendants have aptly demonstrated that this suit may be viewed as both related to and separate from FMC I, depending on the inquiry. (*Id.* at 10 (discussing the parties' reciprocal estoppel arguments).) Moreover, this Court has held that the instant suit is demonstrably distinct from FMC I because it involves allegations of fraudulent conduct, which occurred after FMC I was filed and which are entirely separate from the original trade secret theft alleged in FMC I. (November 27, 2006 Order (Dkt. No. 197) 9, 11–12 (finding that the larger actionable conspiracy exception to the litigation privilege applies in the instant case).) In a similar vein, this Court held that Plaintiffs could not use this subsequent litigation to expand, *ex post*, the scope of FMC I by adding a CFAA claim that should have been brought as part of the first litigation. (December 5, 2006 Order (Dkt. No. 203) 7.)

In light of the foregoing, the Court must determine whether deposing Ms. Kennar in this subsequent lawsuit for fraudulent inducement of the settlement of prior litigation would run afoul of the *Shelton* policy of protecting opposing counsel's litigation strategy in the instant litigation. The nature and scope of the information Defendants seek from Ms. Kennar is a significant factor in making this determination. Defendants seek the following:

ORDER – 5

(1) communications showing what facts FMC knew about evidence adduced in FMC I when it claims to have reasonably believed PES did not have its drawings; (2) communications in which FMC representatives stated beliefs either consistent or inconsistent with Ms. Kennar's statements that FMC believed PES had FMC drawings, and (3) communications about the meaning of the terms in the Settlement Agreement.

(Defs.' Opp'n 2.) Defendants also claim that they are entitled to ask Ms. Kennar questions about FMC I that would not invade the attorney–client privilege, but they do not elaborate on what these lines of inquiry might be. At first glance, the three specific categories that Defendants have outlined are temporally limited to events preceding the actual settlement of FMC I as well as the commencement of the instant suit. In this respect, *Pamida* appears to provide the relevant structure.

However, FMC I and the instant case are intertwined in ways that *Pamida*'s two lawsuits were not. Here, success by Plaintiffs could revive the claims that constituted FMC I. No such possibility existed in *Pamida*, where the subsequent litigation was an insurance indemnification action that did not involve revisiting the prior settlement of a patent litigation or reviving claims from that first lawsuit. 281 F.3d at 728–29. Moreover, while asking Ms. Kennar questions about events in 2003 would not directly require her to do what *Shelton* protects against, such questions may require Ms. Kennar to give testimony that could undermine the theory she is advocating in the present litigation. Under *Pamida*, *Shelton* presumptively protects Ms. Kennar from compromising her role as counsel in the instant litigation, but it does not shield her from inquiry about her role as counsel in FMC I. Because the line between these two roles is blurred under the current circumstances, the Court finds that *Shelton* applies.

Defendants cannot satisfy *Shelton*. The first element requires that no other means exist to discover the information sought by Defendants. Plaintiffs argue that a deposition of Ms. Kennar centered on the state of mind of Plaintiffs at the time FMC I was settled seeks information available from Plaintiffs themselves via the proffered FMC decisionmakers. They are correct. Moreover, the letters written by Ms. Kennar that appear to contradict the testimony of FMC decisionmakers are already readily available.

ORDER – 6

Defendants have thoroughly deposed FMC representatives about these letters. A deposition of the attorney who wrote them is not required simply because it would be helpful.

Second, the information sought is relevant, because it goes straight to an element of fraud: reasonable reliance. Thus, to the extent that Defendants seek nonprivileged information, this prong of *Shelton* is satisfied.

As with the first element, the third element of *Shelton* cannot be satisfied, because, while relevant, a deposition of Ms. Kennar is not crucial to the preparation of Defendants' case. Defendants have already identified a significant potential factual disparity, and they have demonstrated that they have been able to explore it without deposing opposing counsel. Clearly a deposition is not crucial to their defense, helpful though it may be.

Defendants have only satisfied the second element of *Shelton*. Because they have failed on both the first and the third elements, they have failed to satisfy *Shelton* and they may not depose Ms. Kennar. Moreover, because the Court has determined that *Shelton* has not been satisfied and that no deposition may occur of opposing counsel, it need not reach the issue of implied waiver of privileges.

### III. CONCLUSION

Plaintiffs' motion to quash the deposition of Ms. Kennar and enter a protective order is GRANTED in its entirety. Defendants may not depose Ms. Kennar.

SO ORDERED this 15th day of March, 2007.

John C. Coughenour
United States District Judge

ORDER – 7