UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FMC TECHNOLOGIES, INC., and FMC FOODTECH, INC., successors-in-interest to DESIGN SYSTEMS, INC. and STEIN, INC., d/b/a STEIN-DSI,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES EDWARDS and PROCESSING EQUIPMENT SOLUTIONS, INC.,<br><br>Defendants. | CASE NO. C05-946C<br><br>ORDER |

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment regarding Reliance (Dkt. No. 222), Defendants' Motion for Partial Summary Judgment regarding Breach of Settlement (Dkt. No. 223), and Plaintiffs' Motion for Sanctions (Dkt. No. 229). Having considered the papers submitted by the parties on these motions and finding oral argument unnecessary, the Court finds and rules as follows.

I.  BACKGROUND

The facts of this case are summarized in various Orders of this Court. (*See, e.g.*, Orders (Dkt. Nos. 7, 42, 109, 113, 188, 197, 203).) Plaintiffs now seek relief from their settlement of a prior trade-

ORDER – 1

secret lawsuit ("FMC I") based on claims that the defendants in that state court suit fraudulently induced the settlement. Plaintiffs additionally seek damages for Defendants' alleged breach of the settlement. At issue here are (1) whether Defendants are entitled to summary judgment on Plaintiffs' fraud-related causes of action (hereinafter "fraud claim"), particularly on the issue of reliance, (2) whether Defendants are entitled to summary judgment on various issues of breach, and (3) whether Plaintiffs are entitled to judgment as a sanction for alleged discovery abuses by Defendants in this litigation.

Plaintiffs' Third Amended Complaint (Dkt. No. 206) contains three counts. Count One seeks to affirm the Settlement Agreement and seeks relief for fraud, conversion, unjust enrichment, and breach. Specifically, Count One alleges common law fraudulent misrepresentation (First Cause of Action), common law fraudulent statement of intent (Second Cause of Action), unjust enrichment and constructive trust (Third Cause of Action), reformation of contract based on fraud (Fourth Cause of Action), breach of settlement agreement's implied covenant of good faith and fair dealing (Fifth Cause of Action), breach of settlement agreement by premature design of portioner (Sixth Cause of Action), additional breaches (Seventh Cause of Action), unfair competition (Eighth Cause of Action), and breach of settlement by failure to cooperate (Ninth Cause of Action). Count Two is pled in the alternative to Count One, and seeks rescission of the settlement (First Cause of Action) and reinstatement of Plaintiffs' five settled causes of action in FMC I (Second through Sixth Causes of Action). In Count Three, Plaintiffs seek a declaration that Defendants may not assert the testimonial privilege as a bar to Plaintiffs' claims. The Court has already granted the relief sought in Count Three. (November 27, 2006 Order (Dkt. No. 197).) Thus, Counts One and Two are at issue on the instant motions. Defendants' motion for summary judgment regarding reliance seeks to have Count One's First, Third, and Fourth Causes of Action, as well as the entirety of Count Two, dismissed. Defendants' motion for summary judgment regarding breach seeks to have Count One's Fifth, Sixth, and Ninth Causes of Action dismissed. Count One's Second, Seventh, and Eighth Causes of Action are not at issue here.

//

ORDER – 2

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Motions for sanctions seeking dispositive relief, like other motions for sanctions, are governed by Federal Rule of Civil Procedure 37.

## III. ANALYSIS

### A. Reliance

The Court has already noted that under Washington contract law, "a release is voidable if induced by fraud, misrepresentation or overreaching or if there is clear and convincing evidence of mutual mistake." *Nationwide Mut. Fire Ins. Co. v. Watson*, 840 P.2d 851, 856 (Wash. 1992). The nine elements of fraud are: (1) representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the person's reliance on the truth of the representation; (8) the person's right to rely upon it; and (9) the person's consequent damage. *Sigman v. Stevens-Norton, Inc.*, 425 P.2d 891, 895 (Wash. 1967). At issue here are the particular elements involving reliance. Specifically, this Court must

ORDER – 3

determine whether, as a matter of law, the no-reliance language in the parties' settlement contract precludes Plaintiffs' fraud claim. If not, Defendants assert that Washington law would preclude the claim in any event because the alleged fraud goes to statements at the "heart" of the original litigation between the parties and Plaintiffs were not entitled to rely thereon.[1] Alternatively, if Plaintiffs' reliance is not barred as a matter of law, Defendants argue that Plaintiffs cannot prove reasonable reliance as a factual matter.

The parties' Settlement Agreement contains a merger/integration clause, which provides:

> <u>Full Integration/Amendments in Writing.</u>  This Agreement is the entire agreement between the Parties relating to the subject matter discussed above, and replaces any and all prior negotiations, representations, or agreements between the Parties, whether oral, electronic, or written, regardless of subject matter, all of which are merged herein. *The parties acknowledge that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.*  No amendment, modification, or supplement to this Agreement shall be effective unless it is in writing and signed by all Parties.

(Settlement Agreement and Release of Claims ¶ 6.9 (emphasis added).) Defendants argue that the second sentence, emphasized above, precludes Plaintiffs' fraud claim as a matter of law. Plaintiffs counter that the foregoing "no-reliance" language is not preclusive, because (1) it is embedded within the integration clause and is merely a continuation of the first sentence of that clause, which appears in a "Miscellaneous" section near the end of the contract, and (2) in any event, this single "boilerplate" sentence is not specific enough to bar a fraud claim.

As with other issues of state law in this litigation, the Court again notes that, while Washington's highest court has not reached the precise question of whether a no-reliance clause embedded in a merger clause serves to bar a subsequent fraudulent inducement claim in the context of a litigation settlement, there exists thoroughly sufficient guidance as to how this Court should approach this issue in the instant

---

[1] This alternative argument stems from *Mergens v. Dreyfoos*, 166 F.3d 1114 (11th Cir. 1999). In ruling on Defendants' motion to dismiss for failure to state a claim, the Court declined to rule on the fact-intensive question of whether the *Mergens* rule governs in the instant case, finding the issue best left to resolution on summary judgment. (December 8, 2005 Order (Dkt. No. 42).)

ORDER – 4

case. The Ninth Circuit has held that "[w]hen interpreting state law, federal courts are bound by decisions of the state's highest court." *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* Further, "where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Id.* at 1206–07; *see also Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004). This Court finds guidance from Washington courts as well as from other jurisdictions.

Washington courts "follow the objective manifestation theory of contracts, looking for the parties' intent by its objective manifestations rather than the parties' unexpressed subjective intent." *Paradiso v. Drake*, 143 P.3d 859, 862 (Wash. Ct. App. 2006) (citations to Supreme Court of Washington omitted). Accordingly, under Washington law, this Court should "consider only what the parties wrote, giving words in a contract their ordinary, usual, and popular meaning unless the agreement, as a whole, clearly demonstrates a contrary intent." *Id.* Washington courts "do not interpret what was intended to be written but what was written." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). Moreover, it has long been the rule that "in construing a written instrument, that construction will be favored which gives effect to all provisions of the instrument as against one which renders some of them meaningless or ineffective." *Wenatchee Production Credit Ass'n v. Pacific Fruit & Produce Co.*, 92 P.2d 883, 886 (Wash. 1939). Thus, without a compelling rule of counter-construction, there is no reason to find that, when a contract says that the "parties acknowledge that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement," a Washington court would decline to enforce that provision as written.

It is undisputed that there is a significant difference between integration clauses and no-reliance clauses in contracts. The general rule regarding the effect of an integration clause on subsequent fraud

ORDER – 5

claims begins with the purpose of an integration clause. "[A]n integration clause prevents a party to a contract from basing a claim of breach . . . on agreements or understandings, whether oral or written" that were part of negotiations but which never were written into the contract itself. *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2003). Thus, an integration clause is a function of the parol evidence rule. However, "fraud is a tort, and the parol evidence rule is not a doctrine of tort law and so an integration clause does not bar a claim of fraud based on statements not contained in the contract." *Id.* "[A]ll an integration clause does is limit the evidence available to the parties should a dispute arise over the meaning of the contract. It has nothing to do with whether the contract was induced . . . by fraud." *Id.* In contrast, "parties to contracts who do want to head off the possibility of a fraud suit will sometimes insert a 'no-reliance' clause into their contract, stating that neither party has relied on any representations made by the other." *Id.* An integration clause that contains no reference to reliance is nothing more than an integration clause. *Id.* at 645.

      The first significant point of contention between the parties to this litigation is whether a "no-reliance" clause may be embedded in an integration clause, yet function in the same way as if it were separately set forth elsewhere in the contract. The Court of Appeals of Washington has strongly suggested that no-reliance language is just as effective within an integration clause as it is set forth in a separate clause. In *Helenius v. Chelius*, 120 P.3d 954, 963–66 (Wash. Ct. App. 2005), that court specifically addressed a litigant's claim that an integration clause functioned as a "non-reliance" clause as well. In *Helenius*, the parties' Stock Purchase Agreement contained an integration clause entitled "Complete Agreement," which did *not* "explicitly address 'reliance'" or "explicitly limit a party's reliance on the other party's representations." *Id.* at 964. Citing, *inter alia*, *Vigortone*'s discussion of the general rule that an integration clause, alone, does not preclude a fraud claim, the *Helenius* court found that the integration clause in that case did not prevent a subsequent fraud claim. 120 P.3d at 965–66 & n.27. In so holding, the *Helenius* court emphasized the absence of any "reliance" language in the integration clause before it. *Id.* at 965–66.

ORDER – 6

*Helenius* is significant to the instant analysis for two reasons.  First, by pointing out the absence of "reliance" language in the integration clause, the Court of Appeals of Washington acknowledged the possibility of meaningful and binding "reliance" language *within* integration clauses.  Though it found none in the case before it, it follows from the *Helenius* court's inquiry into whether the integration clause contained "reliance" language that the *Helenius* court would have at least considered a different result if the integration clause *had* contained such language.  Second, as the parties have discussed at length in their briefing, there are important differences between securities fraud cases and other contract disputes.  In *Stewart v. Estate of Steiner*, 93 P.3d 919, 927 (Wash. Ct. App. 2004), the Court of Appeals of Washington found that "the fact that one signs a non-reliance provision in a subscription agreement is not necessarily dispositive."  Instead, a determination of "reasonable reliance" must take into account a number of contextual factors.  *Id.* (adopting and applying the multi-factor test of *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411 (1st Cir. 1989)).  This conclusion flowed from the Court of Appeals' acknowledgment that the Supreme Court of Washington requires that "our state securities laws are to be interpreted liberally to achieve the desired effect of protecting investors."  *Id.*  Because *Helenius* was a securities case where *Stewart* controlled, it is remarkable that the Court of Appeals of Washington contemplated whether the integration clause in *Helenius* contained "reliance" language.  If a securities purchaser could be bound by "reliance" language in an integration clause, surely contracting parties receiving less protection from the courts could be so bound as well.  Given that the consumer protection gloss on *Helenius* is not present in the instant case, this Court is further persuaded that Washington courts would give effect to no-reliance language embedded in integration clauses in all varieties of contracts, including the one at issue here.

In the Ninth Circuit too, no-reliance clauses have been held to prevent reliance as a matter of law. In *Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477–78 (9th Cir. 1994) (applying California law), the Ninth Circuit held that the "plain and strong words" of a no-reliance clause in a banking contract precluded a fraud claim as a matter of law, because any reliance could not be

ORDER – 7

"justifiable" in light of the no-reliance clause.  In *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1155, 1159–60 (9th Cir. 1996) (applying federal law), the Ninth Circuit relied on *Bank of the West* when it found that a securities contract's no-reliance clause, which stated that investment decisions were made "without relying on any other Person," "goes far to defeat [one party's] present claims that [it] did precisely the opposite and relied on [the opposing party]."

Moreover, the *Vigortone* court explained that "[s]ince reliance is an element of fraud, the [no-reliance] clause, if upheld—and why should it not be upheld, at least when the contract is between sophisticated commercial enterprises—precludes a fraud suit."  316 F.3d at 645.  Given the obviousness of the sophistication of the parties to the instant dispute—and their legal counsel—the Court need not belabor this point.  However, it is significant that the settlement contract itself speaks to sophistication:

> <u>Interpretation.</u>  *Each Party has read and understood all parts of this Agreement and has had the benefit of counsel in negotiating the terms appearing herein.*  Accordingly, no rule of contract interpretation that runs against the drafte[r] shall be applied in any subsequent dispute over the terms and conditions contained in this Agreement.  To the contrary, this agreement shall be deemed drafted by all Parties jointly.

(Settlement Agreement and Release of Claims ¶ 6.7 (emphasis added).)  This Settlement Agreement is far from an adhesion contract.  Each term was negotiated with the benefit of counsel.  In light of this sophistication and the lack of any rules of construction suggesting that a contract term carries less weight toward the back of an agreement, that a term is less binding if it appears in a part of an agreement denoted "Miscellaneous," or that the plain language of a term can be changed by the paragraph heading under which it falls, the Court finds no reason to deem as surplusage the "no-reliance" language in the Settlement Agreement here.  The text of the agreement confirms that the parties negotiated, with the benefit of counsel, the following term: "The parties acknowledge that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement."

Nevertheless, Plaintiffs argue that this single sentence is insufficiently specific to bar their claim for fraud.  Plaintiffs rely on a few cases from other jurisdictions for this proposition.  For example, in *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316–18 (2d Cir. 1993) (applying New York

ORDER – 8

law), the Second Circuit acknowledged the general rule that integration clauses do not bar fraud claims and that no-reliance clauses generally do bar such claims, before limiting the latter to situations involving specific, non-"boilerplate" no-reliance clauses negotiated between sophisticated parties. In *Yanakas*, the court found that there was no evidence that the parties had negotiated a preprinted "boilerplate" exclusion, and accordingly the court reinstated a previously dismissed fraud claim. *Id*. at 317. Not only is *Yanakas* distinguishable from the instant case because the parties here are sophisticated and did not use a standard preprinted contract form, *Yanakas*'s "specificity" discussion has also been discredited and "applied inconsistently." *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 216–17 (3d Cir. 2005) (discussing *Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 459 (S.D.N.Y. 2003), which distinguished *Yanakas* as "striving to protect the party who had not originally drafted the disclaimer and who might have less sophistication"). In discussing the New York line of cases, and ultimately in declining to apply them to the case before it (involving the enforceability of a waiver), the *MBIA* court[2] emphasized how inefficient it would be for negotiators to identify each and every material issue that is "not a part of the foundation of their relationship, and to list them in a contractual schedule." *Id.* at 216. The *MBIA* court also discussed "obvious risks" of fraud and found it "unimaginable" that a party with the "experience and knowledge" of the party subsequently claiming fraud "would not have realized it was assuming that risk when it agreed to [no-reliance] language." *Id.* at 217. Ultimately, the *MBIA* court was unconvinced that specificity was required and rejected the argument that specificity was more important than clarity:

> The lack of specificity in [the] waivers does not make them any less clear. . . . "[A] method of identification does not become unclear simply because it is terse." This is all the more true when the method of identification is hammered out by sophisticated parties aided by consummate legal professionals, who can be expected to anticipate the subjects it

---

[2] While *MBIA*'s task was to predict whether Delaware's high court would enforce certain contractual language, and the contract at issue here precludes application of Delaware law, the Court finds nothing in the analysis in *MBIA* peculiar to Delaware law that would conflict with Washington law. Indeed, the *MBIA* court relied heavily on other jurisdictions because the question was unsettled in Delaware.

ORDER – 9

1
will identify.
. . . .

2
3
Given the potential for misrepresentation from each side of the agreement, the safer route is to leave parties that can protect themselves to their own devices, enforcing the agreement they actually fashion.

4
*Id.* at 218 (internal citations omitted).

5 This Court is persuaded by the foregoing logic and unconvinced by Plaintiffs' argument that the

6 parties' "no-reliance" clause required more specificity to be enforceable. Likewise, Plaintiffs' claim that

7 the one-sentence clause is "boilerplate" may be true, but this argument nevertheless is unavailing where

8 sophisticated parties have negotiated to include such language. As noted by the Seventh Circuit in

9 construing a single-sentence no-reliance clause,

10
11
12
13
the fact that language has been used before does not make it less binding when used again. Phrases become boilerplate when many parties find that the language serves their ends. That's a reason to enforce the promises, not to disregard them. People negotiate about the presence of boilerplate clauses. . . . Judges need not speculate about the reason a clause appears or is omitted . . . what matters when litigation breaks out is what the parties actually signed.

14
*Rissman v. Rissman*, 213 F.3d 381, 385 (7th Cir. 2000).

15 For the foregoing reasons, the Court finds that Plaintiffs' fraud claim is barred as a matter of law

16 by the plain "no-reliance" language of the parties' Settlement Agreement. Plaintiffs were free to structure

17 their "no-reliance" clause in such a way as to reserve a cause of action for fraud and they did not do so.

18 Because the fraud claim must be dismissed on this basis, the Court need not reach the parties' arguments

19 regarding whether the *Mergens* rule would separately preclude Plaintiffs' fraud claim or the dispute

20 regarding factual support for a fraud claim.

21 Finally, the Court finds Plaintiffs' argument that judicial estoppel requires judgment in their favor

22 on the reliance issue unpersuasive. Judicial estoppel is "an equitable doctrine that precludes a party from

23 gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly

24 inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). It is

25 designed to "'protect against a litigant playing fast and loose with the courts.'" *Id.* (quoting *Russell v.*

26 ORDER – 10

*Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). Application of the doctrine is restricted to cases "where the court relied on, or 'accepted,' the party's previous inconsistent position." *Id.* at 738. The doctrine may be applied to incompatible statements made in two different cases. *Id.* at 783. The United States Supreme Court has defined "three factors that courts may consider in determining whether" the doctrine of judicial estoppel applies. *Id.* at 782. The Supreme Court set forth the factors as follows:

> First, a party's later position must be "clearly inconsistent" with its earlier position. . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula . . . . Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (internal citations omitted). Here, Plaintiffs have made no showing that this Court or any other court was *persuaded* or actually *accepted* Defendants' assertions that they did not steal Plaintiffs' trade secrets. To the contrary, this Court has never endorsed either side's version of the underlying disputed facts. Moreover, because Plaintiffs' fraud claim must be dismissed as a matter of law, these factual arguments are irrelevant to the disposition of this claim.

Accordingly, the First, Third, and Fourth Causes of Action of Plaintiffs' Count One, as well as the entirety of Plaintiffs' Count Two, shall be DISMISSED with prejudice.

**B.    Breach**

    **1.    Failure to Cooperate**

Defendants seek to dismiss Plaintiffs' Count One, Ninth Cause of Action, because it purports to bring a claim for "failure to cooperate" based on Paragraph 4.1 of the Settlement Agreement. This paragraph provides:

> Press Release. The Parties shall agree to issue a mutually acceptable public statement to advise the public and their respective customers that the Parties have agreed to settle the

ORDER – 11

> dispute in order to avoid the cost of trial. The statement will include an acknowledgment by Edwards and Wattles of the enforceability of FMC's noncompetition agreements and FMC's right and legitimate interest in protecting its Trade Secrets. The form of the release will be as set forth in **Exhibit D**.

(Settlement Agreement and Release of Claims ¶ 4.1.) Exhibit D to the Settlement Agreement is a one-paragraph press release. It ends with the following sentence: "Jim [Edwards] and Darren [Wattles] have agreed to cooperate with FMC in the future to make sure that FMC's substantial investment in the water jet cutting industry is protected." (*Id.* Ex. D.) As Defendants point out, this Court has already dismissed without prejudice Plaintiffs' "failure to cooperate" claim contained in their First Amended Complaint, because it relied on the text of the parties' joint press release, not a contractual term. (December 8, 2005 Order (Dkt. No. 42) 7–9.) The Court granted Plaintiffs leave to attempt to state a valid claim for "breach of settlement agreement by failure to cooperate," and advised Plaintiffs that such a claim could not rely on text that was not made one of the contract terms and that it still may be subject to Defendants' "agreements to agree" arguments. (*Id.* at 9.)

The Court finds that to the extent that Plaintiffs seek relief for "failure to cooperate," their claim fails for lack of a textual basis in the contract. Paragraph 4.1 required the parties to issue a press release containing certain language. Plaintiffs do not claim breach for failure to issue a press release. Paragraph 4.1 did not contain a contractual term that the parties "cooperate." The Court may not *add* a term to the parties' contract based on the extrinsic evidence of the press release text. *Berg v. Hudesman*, 801 P.2d 222, 229 (Wash. 1990). Accordingly, Plaintiffs' "cooperation" claim fails because the "Press Release" *term* contains no obligation to "cooperate." Further, even though extrinsic evidence is generally admissible to show the circumstances under which a contract was entered into and to "ascertain the intention of the parties" and properly construe the writing, *id.*, to do so to introduce to a contract a vague term that was not originally part of the instrument runs contrary to the purpose of interpreting a contract. Moreover, even if a "cooperation" term could be incorporated from the press release and also be considered as potentially binding (which it cannot), there is no definition of such a term anywhere in the

ORDER – 12

contract. Therefore, such a term would fail for vagueness in any event as an unenforceable "agreement to agree." *Sandeman v. Sayres*, 314 P.2d 428, 429 (Wash. 1957); *see also Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004).

Finally, to the extent Plaintiffs' now seek to pitch their "cooperation" claim as a "good faith and fair dealing" claim (*see* Pls.' Opp'n), it is redundant because such a claim is made elsewhere in the Third Amended Complaint (Count One, Fifth Cause of Action).

For the foregoing reasons, Plaintiffs' Count One, Ninth Cause of Action shall be DISMISSED with prejudice.

### 2. Covenant of Good Faith and Fair Dealing

Under Washington law, the duty of good faith and fair dealing has very specific boundaries. The Supreme Court of Washington has summarized the duty as follows:

> There is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. However, the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract. Nor does it inject substantive terms into the parties' contract. Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. Thus, the duty arises only in connection with terms agreed to by the parties.

*Badgett v. Security State Bank*, 807 P.2d 356, 360 (Wash. 1991) (internal quotations and citations omitted). Expansion of a contract beyond the obligations already in the contract is impermissible, and the "duty to cooperate exists only in relation to performance of a specific contract term." *Id.* Moreover, "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Id*. Thus, Plaintiffs' good faith and fair dealing claim is limited to the terms of the contract.

Plaintiffs' good faith and fair dealing claim centers on Defendants' retention and use of Plaintiffs' trade secret drawings. Plaintiffs assert as one textual basis for their good faith and fair dealing claim the "Press Release" clause discussed *supra*. However, that term does not contain any reference to retention or use of drawings. Instead, it is limited to the requirements of the public statement. Having alleged no

ORDER – 13

breach of good faith with respect to issuing the press release, Plaintiffs cannot rely on this term for their good faith and fair dealing claim. That the statement to the press was required to contain certain acknowledgments regarding trade secret "rights" does not separately impose a duty to forfeit or not to use drawings.

Plaintiffs' Third Amended Complaint (¶ 65) also enumerates various additional contract terms in support of the good faith and fair dealing claim. These terms are contained in the Recitals and in Section 2 of the agreement. While none of these terms specifically prohibits the retention and use of trade secret information, they do impose limitations on the activities of Defendants that may or may not be proven if Plaintiffs can show that Defendants did keep and/or use such information. Accordingly, to the extent that the good faith and fair dealing claim is linked to these actual contractual terms, it is permissible.

Plaintiffs cite an "implied" right prohibiting Defendants from concealing and using FMC's drawings. This is not a textual source and, under *Badgett*, such an "implied" (*i.e.*, unenumerated) contractual right cannot support an implied duty of good faith and fair dealing. Plaintiffs could have bargained for a contract term requiring Defendants to turn over the drawings or prohibiting them from using stolen drawings whether or not they turned them over. They did not.

Plaintiffs also argue that the "primary" goal of the settlement was to "confirm FMC's legitimate right to protect its trade secrets." However, this purpose appears to track the Press Release clause only. In contrast, the introduction to the settlement states that "the Parties have fully and fairly settled their differences and wish to enter into this Agreement providing for certain obligations of the Parties." (Settlement Agreement 1.) Clearly, the purpose was to settle the lawsuit, including the trade secret claims made therein. Plaintiffs are bound to contractual terms in their efforts to enforce the settlement. The Court will not read new terms into the agreement, but Plaintiffs are entitled to enforce terms that are part of the contract.

Finally, to the extent that Plaintiffs intend to claim that Defendants entered into the entire settlement with no intention of ceasing their alleged trade secret violations, such a claim is subsumed

ORDER – 14

elsewhere in the Third Amended Complaint (Count One, Second Cause of Action) in a claim not at issue here (fraudulent statement of intent).

Accordingly, to the extent that Plaintiffs' Count One, Fifth Cause of Action seeks to allege breach of the duty of good faith and fair dealing regarding terms not actually made a part of the contract, it shall be DISMISSED with prejudice. To the extent that Plaintiffs' Count One, Fifth Cause of Action seeks to allege such breach with respect to terms actually agreed to by the parties and contained in the Settlement Agreement, which are also enumerated in the Third Amended Complaint (¶ 65), it survives. Further, for the reasons set forth *supra*, the Court specifically finds that the "Press Release" clause may not form the textual basis for any alleged breach of the covenant of good faith and fair dealing allegedly committed by keeping or using trade secret information. For the foregoing reasons, Plaintiffs' Count One, Fifth Cause of Action shall be DISMISSED IN PART only.

### 3. Premature Design of Portioner

Defendants claim that there is no material issue of fact for trial as to whether Defendants prematurely engaged in or assisted the design, manufacture, or sale of "water jet equipment that is competitive with the Portioner" in violation of the Settlement Agreement, ¶ 2.4(b) ("Non-Compete" clause). The Court cannot agree. Defendants' arguments that particular equipment developed by Defendants is "not" water jet equipment are factual and only serve to buttress Plaintiffs' assertion that significant factual disputes remain. Such determinations involve evaluation of technical evidence and credibility assessments that are in the sole purview of the jury. The Court declines to address these disputes beyond noting that they are complex, and the Court finds summary judgment on this claim improper.

For the foregoing reasons, Plaintiffs' Count One, Sixth Cause of Action shall proceed to trial.

### C. Sanctions

Plaintiffs' "dispositive" motion is one for sanctions against Defendants. Plaintiffs seek dismissal as a sanction, and alternatively, the entirety of their attorneys' fees as well as Court determinations that

ORDER – 15

1  certain disputed facts are established. Plaintiffs' principal allegation in support of such measures is a

2  charge of spoliation of evidence in this case via the intentional destruction of computer data by Jim

3  Tomlin and Joe Kim, both of whom are former FMC employees who were hired by PES. Plaintiffs also

4  claim that Defendants have systematically stalled and withheld information throughout the discovery

5  process.

6        Federal Rule of Civil Procedure 37 provides for the discretionary imposition of a broad variety of

7  sanctions for discovery misconduct. In the Ninth Circuit,

> Dismissal is an available sanction when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings because courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice. Before imposing the harsh sanction of dismissal, however, the district court should consider the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotations and citations omitted). In *Leon*, spoliation of evidence was clear. Here, however, Plaintiffs' allegations regarding the destruction of computer files are anything but clear and this Court cannot find Plaintiffs' assertions any more or less credible than Defendants' explanations for the "missing" data. Moreover, most of the allegations hinge on witness credibility, and those witnesses' credibility will be evaluated by the jury in this case in due course. The arguments regarding delay in discovery production do not rise to the level of "spoliation," and therefore cannot support judgment against Defendants. Furthermore, the Court declines to exercise its discretion to impose any sanctions short of dismissal as well. The discovery disputes in this matter have been numerous and bilateral. Imposing any of the sweeping sanctions suggested by Plaintiffs on the eve of trial is not justified.

      For the foregoing reasons, Plaintiffs' motion for sanctions is DENIED in its entirety.

//

//

ORDER – 16

IV. **CONCLUSION**

For the reasons set forth in this Order, the Court

(A) GRANTS Defendants' motion for summary judgment regarding Reliance; the First, Third, and Fourth Causes of Action of Plaintiffs' Count One, as well as the entirety of Plaintiffs' Count Two, are hereby DISMISSED with prejudice;

(B) GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment regarding Breach; the Ninth Cause of Action of Plaintiffs' Count One is hereby DISMISSED with prejudice, the Fifth Cause of Action of Plaintiffs' Count One is DISMISSED IN PART only and shall proceed to trial subject to the terms of this Order, and the Sixth Cause of Action of Plaintiffs' Count One shall proceed to trial as pled in the Third Amended Complaint; and

(C) DENIES Plaintiffs' motion for Sanctions in its entirety.

SO ORDERED this 12th day of June, 2007.

John C. Coughenour
United States District Judge

ORDER – 17